JOHN T. STEWART v. A. B. HARRIS.

No. 13,678. (77 Pac. 277.)

SYLLABUS BY THE COURT.

1. CORPORATIONS— *Trusteeship of Managing Officers.* The managing officers of a corporation are not only trustees of the corporate entity and the corporate property, but they are to some extent, and in many respects, trustees for the corporate shareholders.

2. CONTRACTS— *Fiduciary Relations of Vendor and Vendee—Presumption of Equity.* When two parties occupy to each other a confidential or fiduciary relation, and a sale is made by one to the other, equity raises a presumption against the validity of the transaction. To sustain it the buyer must show affirmatively that the transaction was conducted in good faith, without pressure or influence on his part, and with express knowledge of the circumstances and entire freedom of action on the part of the seller.

3. ——— *Purchase of Stock by Manager of Corporation—Duty of Vendor.* A director or managing officer of a corporation having knowledge of the condition of its affairs, because of the trust relation and the superior opportunities afforded for acquiring information must inform a stockholder not actively engaged in the management of the true condition of the corporation before he can rightfully purchase his stock.

Error from Sumner district court; C. L. SWARTS, judge. Opinion filed June 11, 1904. Affirmed.

*Kos Harris*, and *Ed. T. Hackney*, for plaintiff in error.

*W. W. Schwinn*, *C. E. Elliott*, and *James Lawrence*, for defendant in error.

The opinion of the court was delivered by

ATKINSON, J.: On January 5, 1901, A. B. Harris sold to John T. Stewart, for $2000, twelve shares of the capital stock of the Wellington National Bank. Harris subsequently brought this action against Stewart to recover the difference between the amount he received for the stock and its actual value at the time he sold it to Stewart. Judgment was rendered for plaintiff on the verdict and findings of a jury, and defendant prosecutes error.

Defendant, at the time he purchased the stock of plaintiff, was president of the bank and the holder of a majority of the stock, and he had been such president continuously since 1893, and actively engaged in the management of its affairs. Plaintiff was a man over eighty years of age, and retired from active business. He had never engaged in the business of banking and had never attended a meeting of the stockholders of this bank. The petition set forth these facts and in substance, charged that, through his agent, T. F. Randolph, defendant purchased the stock of plaintiff; that he withheld from plaintiff a knowledge of the affairs of the bank, and by fraud, and by concealing from plaintiff the real condition of the affairs of the bank, obtained the stock at much less than its actual value. A recovery was asked for the difference between the amount received and the actual value of the stock at the time of the sale. Defendant's answer, in substance, denied that he withheld from plaintiff the information requested; that had he procured the shares of stock from plaintiff by fraud or

concealment; that Randolph was his agent (under oath) ; and averred that plaintiff had, or could have obtained upon inquiry, full knowledge of the condition and affairs of the bank at the time he sold the shares of stock.

Defendant was charged with undertaking and carrying out a scheme so to manipulate and manage the condition and affairs of the bank as to enable him to acquire the stock at a price grossly inadequate to its real value. The capital stock of the bank was $50,000, represented by 500 shares of the par value of $100 each. When defendant took charge of the bank its affairs were in a deplorable condition ; the bank had been improvidently managed ; the financial condition of the community and the country at large was wretched. Under the change of management many thousand dollars of the notes held by the bank were charged off its books as worthless ; much of the real estate owned by the bank was charged off the books. Time brought about a general improvement of financial conditions, and prosperous agricultural seasons in the community.

One by one the old officers and employees were dropped out. Defendant was a director and president, and became supreme in the management of affairs. By good financiering on the part of the new management, the bank prospered. As conditions improved there were payments made of many of the notes that had been charged off the books as worthless. The lands became valuable. The bank, in the meantime, had become the owner of ninety-eight shares of its capital stock which had been pledged to secure an indebtedness. Its affairs became very prosperous. These conditions were well known to defendant, and. were but slightly known to plaintiff. The payments

made on notes which had been charged off, instead of being carried in the profit-and-loss account, where the condition of the bank would be more readily shown from an examination of its books, were carried in the cashier's account, and funds carried in the cashier's account did not appear as assets. Lands not charged off the books were carried at a nominal valuation only, and lands charged off the books did not appear as assets. The charged-off property and the funds carried in the cashier's account did not appear in the published reports of the condition of the bank.

A four-per-cent. dividend only had been paid to stockholders from June, 1897, and no dividends were paid to the holders of stock during the two years plaintiff was the owner of the stock sold to defendant. Plaintiff, before selling the stock, went to defendant and inquired about the condition of the bank, and asked if dividends would be paid. Defendant informed him that no dividends would be paid, that the bank was in good condition, but that the policy was to strengthen it. He related to plaintiff the bad condition of affairs at the time he took charge of it, and told him of the large amount of paper then charged off. Defendant gave to plaintiff no further knowledge or information of affairs than to say that the bank was in a good condition. Defendant himself at two different times made a proposition to purchase the stock of plaintiff, on one occasion offering $1000, and, about two weeks before he purchased the stock through Randolph, he offered $1400 for it. Plaintiff received from defendant, through his agent, Randolph, $166 per share for his twelve shares of stock. At that time it was worth $350 per share. Gradually defendant bought up stock of the bank. Not long after he purchased the stock of plaintiff, he acquired

the ninety-eight shares of the capital stock held by the bank. This he obtained for a sum much less than its real value. He was then the owner of 445 of the 500 shares of the capital stock. Within a short time thereafter a dividend of 120 per cent. was declared. Other dividends soon followed.

Upon the trial, among others the court gave to the jury the following instruction :

"You are instructed that the president, or other managing officer of a corporation doing business as a bank, stands in relation of a trustee to all the stockholders who are not themselves engaged in the active management of the bank ; and before any managing officer of a bank who is acquainted with its condition and affairs can rightfully purchase the stock of such bank from stockholders who are not actively engaged in the management and operation of the bank, such managing officers must inform such stockholders of the true condition of the bank and its affairs and assets, and must give to such stockholders all the information affecting the value of the stock which such managing officer himself possesses ; and a purchase from a stockholder who is not acquainted with the condition and affairs of the bank of his stock in such bank by one of the managing officers, without first having informed such stockholder of the true conditions of the bank and of the amount and value of its assets, is a fraud on the part of such managing officer, and renders him liable to pay the stockholder the full value of the stock, without reference to the price agreed on at the time of the sale, provided the stockholder himself does not know the value of the stock."

Of the giving of said instruction plaintiff in error complains and assigns error. Does the instruction given correctly state the relation of the president or other managing officer of a corporation to the stockholders of such corporation not actively engaged in the management of its affairs ? Does it correctly

declare the lawful duty of such president or other managing officer, relative to his obligation to the stockholders not engaged in the active management of the corporation, before he can rightfully purchase of them their stock ?

The exact questions before us have never been determined by this court.   Our attention is directed to *Mulvane v. O'Brien*, 58 Kan. 463, 49 Pac. 607, as a parallel case.   Mulvane was a director and the president of the corporation and O'Brien was also a director and the secretary.   Defendant himself did not purchase the stock of plaintiff, but sold it to another and accounted to plaintiff for the par value only, and not for the amount he had actually received for it.   The action was to recover from defendant the difference between the amount accounted for and the amount defendant actually received for the stock.   The case was determined, not on the duties of defendant toward plaintiff because of any fiduciary relation existing between them as a stockholder and the president and managing officer of a corporation, but because of a contract of agency at the time existing between them, whereby defendant undertook to sell for plaintiff his stock in the corporation.   Again, had the right to a recovery been based on a claim of fiduciary relation existing between defendant and plaintiff, the former as the president and managing agent of the corporation and the latter as a stockholder therein, the facts would materially differ from those in the case under review. There defendant and plaintiff were president and secretary, respectively, of the corporation, and jointly managed its affairs.   Each was actively engaged in the management, and had an equal opportunity to know of its condition and affairs.   The same cannot be said of plaintiff and defendant in the case at bar.

The managing officers of a corporation are trustees not only in relation to the corporate entity and the corporate property, but they are also, to some extent and in many respects, trustees for the corporate shareholders. That they are trustees for the corporation and the corporate property all the authorities are agreed. It would be difficult to lay down a general rule comprehensive of the extent of, and all the instances in which, their trusteeship exists as to the stockholders of the corporation. Pomeroy, in his work on Equity Jurisprudence, after an analysis of the relations, recognizes and announces the doctrine that in their fiduciary relation the directors and managing officers of a corporation occupy, as to the corporate entity and corporate property, the position of *quasi*-trustees. Of the relation of such officers to the stockholders of the corporation, he says :

"On the other hand, the directors and managing officers occupy the position of *quasi*-trustees towards the stockholders alone, and not at all towards the corporation, with respect to their shares of stock. Since the stockholders own these shares, and since the value thereof and all their rights connected therewith are affected by the conduct of the directors, a trust relation plainly exists between the stockholders and the directors, which is concerned with and confined to the shares of stock held by the stockholders ; from it arise the fiduciary duties of the directors towards the stockholders in dealings which may affect the stock and the rights of the stockholders therein, and their equitable remedies for a violation of those duties. To sum up, directors and managing officers, in addition to their functions as mere agents, occupy a double position of partial trust; they are *quasi-* or *sub-modo* trustees for the corporation with respect to the corporate property, and they are *quasi-* or *sub-modo* trustees for the stockholders with respect to their shares of the stock." (Vol. 2, 2d ed., § 1090.)

The supreme court of the United States, in *Jackson v. Ludeling*, 21 Wall. 616, 22 L. Ed. 492, declared:

"The managers and officers of a company where capital is contributed in shares are, in a very legitimate sense, trustees alike for its stockholders and its creditors, though they may not be trustees technically and in form."

In *Sargent v. K. M. Rld. Co.*, 48 Kan. 672, 688, 29 Pac. 1063, an action brought by Sargent to recover on an order assigned to him for 1000 shares of the stock of the railroad corporation, the question of the good faith of the transaction was before the court for determination. Chief Justice Horton, in speaking for the court, said:

"The relation between the directors of a corporation and its stockholders is that of trustee and *cestui que trust*. The directors are persons selected to manage the business of the company for the benefit of the shareholders. It is an office of trust which, if they undertake, it is their duty to perform fully and entirely. No director of a railroad company or any other corporation can use his official position to secure a personal advantage to himself."

The general rule applicable to a purchase and sale between parties who sustain to each other a confidential or fiduciary relation appears to be that, to sustain the sale, the buyer must show affirmatively that the transaction was conducted in perfect good faith, without pressure or influence on his part, and with express knowledge of the circumstances and entire freedom of action on the part of the seller. The rule is applied with more or less strictness to all the well-known cases of fiduciary relation, as that of attorney and client, trustee and *cestui que trust*, principal and agent, and guardian and ward. (*Dunn v. Dunn*, 42 N. J. Eq. 431, 7 Atl. 842; 8 A. & E. Encycl. of L., 2d ed., 644.)

In *Oliver v. Oliver*, 118 Ga. 362, 45 S. E. 232, the right of plaintiff to a recovery was conceded where defendant, the president and director of a corporation, purchased of plaintiff his holdings of stock in the corporation at $110, worth at the time $185 per share. The action was brought to recover of defendant the difference between the amount by plaintiff received for the stock and the value of the stock at the time of the sale. It was charged that defendant in the purchase of the stock withheld from plaintiff information known to defendant and unknown to plaintiff relative to its value, which, owing to the fiduciary relation existing between the parties, it was the duty of the defendant to disclose to plaintiff. It is a well-considered case. Many features of it are applicable to the case under review. We quote from the opinion the following :

"It is a matter of common knowledge that the market value of shares rises and falls, not only because of an increase or decrease in tangible property, but by reason of real or contemplated action on the part of managing officers ; declaring or passing dividends ; the making of fortunate or unfortunate contracts ; the loss or gain of property in dispute ; profitable or disadvantageous sales or leases. And to say that a director who has been placed where he himself may raise or depress the value of the stock, or in a position where he first knows of facts which may produce that result, may take advantage thereof, and buy from or sell to one whom he is directly representing, without making a full disclosure and putting the stockholder on an equality of knowledge as to these facts, would offer a premium for faithless silence, and give a reward for the suppression of truth. It would sanction concealment by one who is bound to speak and permit him to take advantage of his own wrong—a thing abhorrent to a court of conscience. It is conceded that the position which the director occupies prevents

him from making personal gains at the expense of the company or of the whole body of stockholders. But a rule that he is not trustee for the individual share-sholders leads inevitably to the conclusion that while a director is bound to serve stockholders *en masse* he may antagonize them one by one ; that he is an officer of the company, but may be the foe of each private in the ranks. When it is admitted, as it must be both from the very nature of his duty and from the rulings of nearly all the cases, that he is trustee for the share-holder, how is it possible, in principle, to draw the line and say that while trustee for some purposes he is not for others immediately connected therewith?''

The case of *Board of Commissioners of Tippecanoe Co. v. Reynolds*, 44 Ind. 509, 15 Am. Rep. 245, is the leading authority cited and relied on by plaintiff in error in support of the claim that the instruction under consideration does not correctly state the law. It was in that case held that there was no relation of trust between the president and director of a corporation and one of its stockholders ; that in the absence of actual fraud a purchase of stock by the former from the latter was valid, though in his official position the president knew at the time he purchased the stock it was worth more than its nominal market value, but did not disclose to the stockholder the facts within his knowledge as to its real value. The decision was rendered by a divided court in 1873. It is bottomed upon the view announced by the court that, while the officers and managing agents of a corporation are trustees for the corporation and its corporate property, they sustain no trust relation to the stockholders of the corporation, and owe to them none of the duties of a trust relation. The rule laid down has met with much criticism. The position taken leaves the stock-holders' interest in the corporation and all matters affecting its value wholly in the charge and keeping

of the managing officers of the corporation, and leaves the stockholders their legitimate prey. We cannot give the sanction of our approval to the views there expressed.

The fact that the directors and managing officers of a corporation are *quasi*-trustees for the stockholders does not prohibit them from dealing with the latter. The only restriction is that in such dealing their conduct be fair, open, and above reproach. Because of the trust relation and the better opportunities afforded for acquiring information, before any director or managing officer of a corporation, having a knowledge of the condition of its affairs, can rightfully purchase the stock of one not actively engaged in the management he must inform such stockholder of the true condition of affairs.

Defendant suggests that plaintiff himself should have exercised more diligence in investigating the affairs of the bank ; that the books were open to him. By this we are asked to say that in this case a means of knowledge is equivalent to knowledge ; that a clue to the facts which, if diligently followed up, would lead to a disclosure is equivalent to a discovery. Plaintiff could not be required to make an investigation of the books of the bank to determine its financial condition simply because it was in his power to do so. The diligence required by one to protect his interests is only such as a person of ordinary prudence would exercise under like circumstances. In a case like this the trust relation existing between the parties, the superior opportunities of defendant to know of the condition of the affairs of the bank, and his actual knowledge of its affairs, required no such diligence of inquiry on the part of plaintiff as contended for by defendant. Plaintiff had the right to rely upon

the belief that defendant would disclose to him the true condition of the affairs of the bank and that he would not be called upon to investigate the condition of its affairs before he could with safety sell to defendant his holdings of stock.   It is not the intent of the law to place a restraint on the affairs of business when conducted fairly, honestly, and openly, nor to deprive one party to a contract of the advantage which superior judgment, greater skill or better information may give, but it cannot give its approval to a course of dealing that will permit those occupying a trust relation to be unmindful of the trust, betray the confidence reposed, and profit by such betrayal.

The jury, in addition to returning a general verdict for plaintiff, returned numerous special findings. The record discloses that there was some competent testimony to support all the special findings returned, including the one that Randolph was the agent of defendant.   The findings are in harmony with and uphold the general verdict.

The brief of plaintiff in error contains sixty-seven assignments of error.   Most of them are based on the rulings of the trial court in the admission of testimony.   Some are admitted by counsel to be unimportant, or cured or corrected by subsequent proceedings. Many of them are based on the claim that the testimony introduced was not within the issues.   In a case of this character, where fraud is charged, great latitude is allowed to the scope of the inquiry, the limit resting largely in the discretion of the trial court.   The record discloses no abuse of this discretion.   Nor did the court abuse its discretion in limiting the number of witnesses used on impeachment.

The instructions given fairly state the law of the

case, and there was no error in refusing the instructions requested and not given.

The judgment will be affirmed.

All the Justices concurring.