JOHN T. STEWART V. H. F. SMITH.

No. 14,283.   (82 Pac. 482.)

SYLLABUS BY THE COURT.

FRAUD—*Sale of Bank Stock—Dividends—Evidence.*   Under the
facts of this case the circumstance that dividends upon bank
stock were declared in the years 1902 and 1903 from the col-
lection and the sale of assets charged off the books of the
bank long prior to the year 1900 was insufficient to prove
that the value of such dividends attached to the stock in
the year 1900.

Error from Sumner district court; CARROLL L.
SWARTS, judge.   Opinion filed October 7, 1905.   Modi-
fied.

*Kos Harris,* and *Ed. T. Hackney,* for plaintiff in
error.

*W. W. Schwinn,* and *James Lawrence,* for defendant
in error.

The opinion of the court was delivered by

BURCH, J.:   The action in the district court from
which this proceeding in error arose was brought by
H. F. Smith to recover damages suffered on account
of a fraudulently induced sale of his stock in the
Wellington National Bank to its president and mana-
ging director, the defendant, John T. Stewart.   The
sale was made on December 26, 1900, at the price of
$150 per share.   The trial court found the value of
the stock at that time to be $350 per share, and, having
determined that the sale was procured by fraud, ren-
dered judgment in favor of the plaintiff for a sum
computed upon the difference between the amounts
stated, as damages.   The chief controversy in this
court relates to the manner in which the value of the
stock at the time of the sale was ascertained.

The case is a companion to that of *Stewart v. Harris,*
69 Kan. 498, 77 Pac. 277, 66 L. R. A. 261, where the
organization of the bank is described, an account of its

business is given, and the methods of the defendant in conducting it are set forth. To the recital of facts there made only a brief summary and additional statement are necessary.

On December 26, 1900, 98 of its 500 shares of stock were held by the bank itself. These shares were carried on the books of the bank contrary to law, as charged-off assets. Upon learning the facts the comptroller of the currency ordered the shares to be sold, and this was done at public auction on April 5, 1901, when they were purchased by the defendant for $7000. On July 9, 1901, the defendant sold all his stock (amounting to 445 shares) at the price of $145.875 per share. In this sum, however, was a ten-per-cent. bonus allowed him by the purchasers for guaranteeing the assets of the bank, and he retained the right to receive all dividends that thereafter might be declared from the collection or sale of charged-off assets. For the years 1897, 1898, 1899 and 1900 the net earnings of the bank aggregated $62,146.70, but for the period embracing the same years the sum of $44,368.24 was charged off against bad debts and $6370 against the ninety-eight shares of stock referred to. At the time plaintiff sold his stock the sum of $5375.40 derived from the collection of charged-off items was carried in the cashier's account. Between December 26, 1900, and July 9, 1901, the bank earned $6696.

In May, 1901, a dividend was declared of $120 per share; in April, 1902, a dividend of $25 per share was declared from the proceeds of the collection of charged-off assets; and in March, 1903, a further dividend of $27.31 per share was declared from the proceeds of a sale of the remaining charged-off assets. These dividends were all declared on the basis of 500 shares outstanding.

In arriving at the value of the plaintiff's stock at the time he sold it the court had the right to disregard the price paid by the defendant for the ninety-eight shares, since their sale was in a manner forced, and

on that account could not furnish a just criterion. It had the right to conclude that the plaintiff's stock was worth the 120 per cent. dividend declared in May, 1901, since the cashier's account alone was practically able to pay it at any time in the preceding December. The price at which the defendant sold his shares was, in view of all the facts, a fair measure of value on July 9, 1901, and, by allowing for the ten-per-cent. bonus above their value which the defendant received, and deducting from the total value of the stock on July 9, 1901, the earnings after December 26, 1900, and the $7000 received from the sale of the ninety-eight shares, the value of the stock on December 26, 1900, was easily ascertainable. The court, however, appears to have gone further, and held the plaintiff's stock to include, on December 26, 1900, the additional value of the dividends declared from charged-off assets in April, 1902, and March, 1903. In doing this the court erred.

The mere fact that certain assets were charged off the books of the bank did not indicate that they were utterly worthless. It merely showed that they were not of a character to be available as resources with which to meet the bank's liabilities. The fact that the defendant in selling his stock reserved the right to dividends which should be declared from this source indicated his judgment that they were of some value, and probably the court would have been warranted in presuming that they were worth something. But the burden was imposed upon the plaintiff to prove the sum by which they augmented the value of his stock at the time he sold it. He sought to do this merely through the strength of the inference to be derived from the payment of dividends long after the time when his rights became fixed. There is no inflexible rule of law by which the validity of such inference may be determined. The nature of the particular subject under consideration, and the peculiar circumstances and conditions attending it, must in

each case control. (*The State v. Durein,* 70 Kan. 1, 9, 78 Pac. 152, 154; 1 Wig. Ev. §§ 437, 463.)

In this instance the property itself was not of such a nature that stability of value through considerable periods of time could safely be predicated of it. It consisted of real estate, including a large number of town lots, and of notes ranging in amounts from $5 to over $4000. The court would be obliged to say from its own judicial knowledge that, during the time that elapsed between December, 1900, and the payment of the dividends in question, property generally throughout the state appreciated in value. During that time many factors may have contributed to make this real estate salable for the first time since the bank acquired title to it. Many notes may have been paid in whole or in part which could not have been collected by law, and the bank may have been able to realize upon others which the plaintiff would not have taken as a gift had he been required to nurse them to a settlement. Therefore, the contingencies were too numerous and the uncertainties too great for the court to declare that because these assets produced the sums attributed to them in 1902 and 1903 they were worth both those sums in December, 1900.

The defendant should not be charged with the dividends in dispute merely because they accrued upon the stock which the plaintiff sold to him, since any such rule would permit the plaintiff to speculate upon his damages.

In determining the value of each one of plaintiff's shares on December 26, 1900, it was proper for the court to divide the total value of all the assets by 402, since that was the number of shares then outstanding. If the bank had been closed up and all its assets had been distributed on that date, whatever of value attached to the ninety-eight shares would have been divided among the holders of the remainder of the stock.

The averments of the petition were sufficient to en-

title the plaintiff to relief on the ground of fraud, and, in view of the manner in which the case was tried and submitted, it was not necessary that the petition be amended in order that the court might render judgment for damages occasioned by the fraud disclosed.

In the light of the foregoing, other errors assigned do not require special discussion. The cause is remanded to the district court, with direction to modify its judgment in accordance with the views herein expressed.

All the Justices concurring.