No. 19,504.

H. KAUFMAN, *Appellant,* v. R. B. CHRISTY, *Appellee.*

SYLLABUS BY THE COURT.

SALE—*Patent Right—Competent Evidence to Show Actual Vendor in the Transaction.* The defendant was sued for the price of a patent right which it was alleged he sold to the plaintiff. The defense was that the defendant was not the vendor. Under the rule which permits the introduction in evidence of facts which are relevant to facts in issue, which explain facts in issue and relevant facts, and which support or rebut inferences from such facts, it is held that it was proper for the defendant to explain his conduct and show his true relation to the transaction. To this end it was proper for him to show his agency to procure the subject of sale from the patentee for the actual vendor, the execution of such agency, that he was a creditor of the patentee, and the distribution of the proceeds of the sale made to the plaintiff whereby he obtained payment of a portion of the patentee's indebtedness to him.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 8, 1915. Affirmed.

*S. B. Amidon, D. M. Dale, Jean Madalene,* and *S. A. Buckland,* all of Wichita, for the appellant.

*Kos Harris,* and *V. Harris,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was commenced by Kaufman to recover money which he paid for a patent right claimed to have been purchased from Christy. The verdict and judgment were for the defendant and the plaintiff appeals.

The petition alleged that the Burner Grate Manufacturing Company was the owner of certain patents for oil and fuel burners. The defendant represented to the plaintiff that he had certain rights under the pat-

ents, vested in him by a lease from the manufacturing company, covering Sedgwick county. On July 27, 1911, the plaintiff and the defendant entered into an oral contract of sale whereby the defendant agreed to convey to the plaintiff, or procure to be conveyed to him, the exclusive right to sell and install the burner grate system in Sedgwick county, for the sum of $2500. The defendant represented to the plaintiff that it would be more convenient to have the manufacturing company execute a lease direct to the plaintiff. Pursuant to agreement with the defendant the plaintiff deposited in the Fourth National Bank of Wichita the sum of $2500, to be delivered to the defendant when the defendant should deposit the lease with the bank. The lease was duly deposited with the bank and the deposit of money was turned over to the defendant. The defendant did not comply with the law regarding the filing of letters patent in the office of the clerk of the district court of the county wherein the sale was made. Because of this fact the plaintiff received no consideration for the $2500 paid to the defendant.

The answer was a general denial. The defense was that the defendant had no interest in the burner grate patents or right to sell or install the burner grate system in Sedgwick county, that he made no representations to the plaintiff that he had such an interest or right, and that he made no sale to the plaintiff, but that the plaintiff purchased of another.

Among those interested in the Burner Grate Manufacturing Company were Swarens, the president, Bathers, the vice president, and Chenoweth, the secretary. These persons were indebted to the plaintiff on a promissory note for $1000. H. A. Post made inquiries of the plaintiff concerning the burner grate system, indicated a desire to become financially interested in it, and requested the plaintiff to have Chenoweth reserve Sedgwick county for him. Subsequently the plaintiff procured Chenoweth and Swarens to reserve

Sedgwick county for Post and agreed to furnish Post money with which to make installations if he needed it. E. E. Boyle, an office associate of the plaintiff, and the plaintiff became attracted toward the burner grate system and conversed with Swarens on the subject in the office of the manufacturing company in Kansas City, Mo: On July 27, 1911, a demonstration of the burner grate system occurred at Wichita. The defendant, who is a banker living in Scott City, had been in Kansas City, Mo., and on his way home stopped at Wichita to see the demonstration. Post was present at the demonstration. In the evening of July 27, the plaintiff, the defendant, Boyle, and Post met in the plaintiff's office and the sale was made to the plaintiff. The next morning the plaintiff deposited the sum of $2500 in the Wichita bank to be delivered as stated in the petition. At the plaintiff's request the defendant procured a lease for Sedgwick county from the manufacturing company to be sent to the bank. The defendant gave Post an order on the bank for the deposit, which Post received when the lease arrived. Post kept $1190 of the money and took a draft for the balance, $1310, which he sent to the defendant. The latter sum was the price of the manufacturing company for the lease for Sedgwick county, computed upon some population basis. Out of the draft which Post sent him the defendant paid the manufacturing company $1020 by check and by agreement with the manufacturing company's officers credited $290 on their note.

The testimony as to what occurred at the plaintiff's office when the sale was made was quite conflicting, and the witnesses disagreed upon other important matters. The jury resolved these conflicts in favor of the defendant and returned with the general verdict the following special findings of fact, which were well sustained by the evidence:

"Question 1. Did Christy have any interest in the Grate Burner Manufacturing Company, except as its creditor? Answer. No.

"Question 2. Was not Kaufman informed, before July 28th, 1911, that Post had the right to Sedgwick County, Kansas, from the Company? Answer. Yes.

"Question 3. Was not $1310.00 the amount due to the Company for Sedgwick County? Answer. Yes.

"Question 4. Did not Christy pay to the Company $1020.00 by check and $290.00 by credit on his note against Company? Answer. Yes.

"Question 5. Did Christy get any part of the $2500.00, except the $290.00 paid him by credit on the $1000.00 in evidence? Answer. No.

"Question 6. Did not Post claim to own the right to Sedgwick County on July 27th, 1911, in the presence of Christy, Boyle and Kaufman? Answer. Yes.

"Question 7. Did Christy, at any time, before Kaufman agreed to pay the $2500.00, tell Kaufman that he owned the right to Sedgwick County? Answer. No.

"Question 8. Did not Post, on the night of July 27th, 1911, say to Kaufman and Boyle, in Christy's presence, that he, Post, would not take less than $2500.00? Answer. Yes.

"Question 9. Did not Kaufman or Post, on the morning of July 28th, 1911, request Christy to have the Company lease made to Kaufman, direct? Answer. Yes.

"Question 10. Did not Post have option or refusal of Sedgwick County from the Company? Answer. Yes."

The instructions to the jury are not abstracted and it must be assumed that they were correct and adequate.

The error assigned is the admission of the oral evidence relating to the transactions between the plaintiff and Post and between the plaintiff and the officers of the manufacturing company whereby Post obtained the right to Sedgwick county, and the admission of the evidence, oral and documentary, relating to the distribution of the money paid by the plaintiff for the lease.

The issue was, Who made the sale of the patent right for Sedgwick county to the plaintiff, the defendant or Post? The fact that Post and not the defendant owned the subject of sale was clearly relevant to this

issue. If Post's title had been evidenced by a written instrument it would have been admissible. Being evidenced by oral agreement, the conversations making up the agreement were admissible. The negotiations were conducted by the defendant and his agency for the purpose was admissible. It is true that it made no difference that the defendant had nothing to sell if in fact he undertook to sell the patent right to the plaintiff. But the question was whether or not the defendant did undertake to sell the patent right to the plaintiff, and the fact that the subject of sale belonged not to him but to another tended in some degree to rebut the inference that he was selling it. Besides this, the plaintiff's evidence was sufficient to identify the defendant as the actor in making the sale. To meet this evidence it was proper for the defendant to explain his conduct and show his true relation to the transaction. The defendant's agency to procure the patent right for Post, the execution of that agency, the defendant's relation of creditor to the officers of the manufacturing company, and the distribution of the proceeds of the sale made to the plaintiff were all admissible for these purposes.

The general rule governing the subject is that which permits the introduction in evidence of facts which are relevant to facts in issue, and which explain facts in issue and relevant facts, and support or rebut inferences from such facts.

Time does not permit a search for a parallel case. That of *Tracy v. McManus*, 58 N. Y. 257, is illustrative. The opinion reads:

"The appellant, McManus, was sought to be charged as a copartner in the firm of Tighe & Robinson, in the business of brewing and distilling. He denied being a partner in the firm. The evidence to connect him with it in that relation was circumstantial. There was no direct proof of the alleged partnership. The circumstances mainly relied upon by the plaintiff were, that

McManus purchased and owned the brewery and apparatus, with which the business of the firm was carried on; that he furnished the firm with capital, and also attended to its financial business, receiving the proceeds of sales, and paying the liabilities. Evidence was also introduced, on the part of the plaintiff, for the purpose of showing declarations of McManus, to the effect that he was interested in the concern as a partner. These were controverted.

"McManus being sworn, and testifying in his own behalf, denied being a partner, or interested in the profits of the concern. He admitted his ownership of the brewery, etc., and his intervention in the conduct of its affairs, but sought to explain his action by showing that Tighe and Grattan, two of the members of the firm, were relatives of his, and that in purchasing the brewery and making advances to the concern his sole motive was to aid his relatives. That all he received was a specified sum per annum for the use of his property. The evidence as to his motive was excluded by the court. We concur with the General Term in the opinion that it ought to have been allowed to go to the jury. Acts on the part of McManus had been proved, calculated to show that he was interested in the business. These acts, in the absence of any explanation of their motive, tended not only to sustain the plaintiff's allegation of interest, but to corroborate the evidence as to oral declarations of McManus, touching his interest in the concern. In the absence of any such motive as he endeavored to prove, his conduct in buying the property, furnishing capital, and aiding the firm in the management of its business, would naturally lead to the inference that he was interested in the business, and acting for his own advantage. This inference he had a right to rebut, by showing that he was actuated by a motive which rendered his conduct consistent with an absence of any pecuniary interest of his own in the profits of the business. If he was a partner, it was of course immaterial what motive caused him to become such. But the very question was, whether he was a partner or not. As bearing upon this question, certain acts were proved, which would, under ordinary circumstances, indicate that he was interested in the business. We think that he had the right to explain these acts by

showing that he did them for the purpose of aiding his relatives, and that, therefore, they were not inconsistent with his allegation that he had no interest. The existence of this motive was a fact which the defendant had a right to lay before the jury, in order that it might be considered by them in drawing inferences from his actions." (p. 260.)

The judgment of the district court is affirmed.