(578 P 2d 1138)
No. 49,158

JOHN H. FIELDS, *Appellant,* v. STAUFFER PUBLICATIONS, INC., *Appellee.*
Petition for review denied September 26, 1978.

Opinion filed May 19, 1978.

*John Anderson, Jr.,* of Anderson, Granger, Nagels & Lastelic, of Overland Park, and *Scott I. Asner,* of Carson, Fields & Boal, of Kansas City, for the appellant.

*J. Nick Badgerow* and *Bill E. Fabian,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee.

Before PARKS, P.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is an appeal from an order dismissing plaintiff's cause of action with prejudice for his failure to answer a certified question.

This action was commenced by the plaintiff, John H. Fields, on August 6, 1975, the day following the publication of an article in *The Kansas City Kansan,* a newspaper owned by the defendant, Stauffer Publications, Inc. The article was entitled "Bid May Violate Ethics." The general tenor of the article was that the law firm of Carson, Fields, Kugler & Boal, over the signature of John H. Fields, had submitted an unsolicited proposal to handle all the legal work of the Board of Public Utilities, and that the proposal might violate Canon No. 2 of the Code of Professional Responsibility. Canon No. 2 prohibits a lawyer from recommending employment of himself, his partner or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer. The

article made mention that the written proposal stated it was submitted in response to a request by the board. The article, however, went on to attribute statements to board members and employees of the Board of Public Utilities that they had not requested the proposal. Although not material to our disposition of this appeal, evidence developed during discovery reveals that some members of the board did specifically invite the proposal. John H. Fields was of the opinion that the article was libelous and damaging to his law practice. This suit followed.

Defendant, in the course of its discovery, took Field's deposition on April 14, 1976. The following took place:

"Q [By Mr. Fabian] Had you or any member of your association supported any of the then constituted Board in their election efforts?

"A [By Mr. Fields] I personally feel that that is immaterial and I respectfully decline to answer that unless the court orders me to.

"MR. FABIAN: We had better certify that one.

"Q [By Mr. Fabian] Had you or any member of your association contributed monetarily to the election efforts of any of the then constituted members of the Board of Public Utilities?

"A [By Mr. Fields] Same response.

"MR. FABIAN: Certify it."

The two questions were certified to the district judge and a motion was filed by defendant to require Fields to answer the certified questions. Fields filed a motion for a protective order. A hearing was held and the district judge ordered Fields to answer.

A second deposition of Fields was taken on February 21, 1977. Fields again refused to answer the certified questions on the grounds the questions were not relevant or material to any issue involved in the litigation.

The questions were again certified. The Honorable Don Musser was assigned to hear the matter. (Judge Musser allowed the parties an opportunity to brief the issue, but no briefs were filed.) Judge Musser, by letter dated March 30, 1977, directed that:

"The plaintiff answer in writing under oath the following by April 15, 1977, sending a copy of the answer to counsel for defendant and to the court, but the same need not be filed in the case as a public record.

"Question: Did you or the law firm of Carson, Fields, [Kugler] and Boal monetarily contribute to the campaign of Shirley Cahill, Joe Mulich, Al Bukaty, or Paul Haas in the Board of Public Utilities election?

"Failure to answer the above question as directed by the court by April 15, 1977, will result in the dismissal of plaintiff's claim in this case, with prejudice, on April 18, 1977. Counsel for the defendant may prepare a formal Journal Entry to this affect [sic] if desired."

The plaintiff did not answer the question and the trial judge dismissed the case with prejudice. This appeal followed.

On appeal, plaintiff raised and briefed two issues. Did the trial court err in ordering the plaintiff to answer the questions, and did the court abuse its discretion in dismissing the plaintiff's cause of action for plaintiff's failure to answer the questions?

At oral argument, plaintiff for the first time contends that the nature of the inquiry falls within the area of privilege as enunciated in K.S.A. 60-226(b)(1). He argues the question sought information concerning political action, which is protected by the First Amendment to the United States Constitution.

Defendant correctly states the rule that an appellate court will not consider an issue that was not presented to the trial court. (*Nelson v. Hy-grade Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 [1974].) The Kansas Supreme Court, however, has recognized exceptions to the general rule "where the newly asserted issue involves only a legal question arising on proved or admitted facts and which will be finally determinative of the case, or where consideration is necessary to serve the ends of justice or to prevent a denial of fundamental rights." (*Pierce v. Board of County Commissioners,* 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 [1967].)

Although we would not ordinarily consider a question not raised in the trial court, we deem the allegation of a denial of fundamental rights in this case of sufficient importance to further comment. In addition, the defendant, a corporation whose very existence would be threatened by a loss of First Amendment guarantees, would be hard pressed to argue that such a loss would not be a denial of fundamental rights. We do not, however, deem it necessary to ascertain whether or not plaintiff has a First Amendment right that is recognizable as "privileged" under K.S.A. 60-226(b)(1).

Even if we were to hold plaintiff has a First Amendment right privileged under the statute, it would be of no comfort to plaintiff. A court of law will not permit a plaintiff to profit by exercising his constitutional rights to the detriment of a defendant. (*Stockham v. Stockham,* 168 So. 2d 320 [Fla. 1964]; *Levine v. Bornstein,* 13 Misc. 2d 161, 174 N.Y.S.2d 574 [1958], aff'd 7 App. Div. 2d 995, 183 N.Y.S.2d 868, aff'd 6 N.Y.2d 892, 190 N.Y.S.2d

702, 160 N.E.2d 921 [1959]; *Franklin v. Franklin,* 365 Mo. 442, 283 S.W.2d 483 [1955]; *Geldback Transport, Inc. v. Delay,* 443 S.W.2d 120 [Mo. 1969]; see, also, 4 A.L.R.3d 545.) The theory is that a plaintiff should not be allowed to benefit financially from litigation in which he has exercised his constitutional rights to conceal relevant information. To allow him to do so would place the defendant at a distinct disadvantage in defending his position. We hold that where a party seeking relief in a civil action exercises a constitutional privilege and refuses to testify concerning evidence which is discoverable under K.S.A. 60-226, the party's actions will be judged in the same manner and by the same rules as though that party had refused to comply with any other discovery order.

Having determined the plaintiff may not claim privilege, we turn to the question of relevancy. The question in this case is whether the information sought from plaintiff is relevant to the subject matter or appears reasonably calculated to lead to the discovery of admissible evidence. If the information sought meets that test, then the fact that the information sought will be inadmissible at the trial is immaterial.

The scope of relevancy in deposition proceedings is broader than the scope of relevancy at trial. (2A Barron and Holtzoff, Federal Practice and Procedure, Civil § 641, p. 14.) Furthermore, the scope of discovery is to be liberally construed so as to provide both parties with information essential to proper litigation on all of the facts. (*Hickman v. Taylor,* 329 U.S. 495, 91 L.Ed. 451, 67 S.Ct. 385 [1947].) "Relevancy" has been defined to include information which may be useful in preparation for trial. (*Carrier Manufacturing Co. v. Rex Chainbelt, Inc.,* 281 F. Supp. 717 [E.D. Wis. 1968].) It has been said that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to subject matter of the lawsuit. (*Detweiler Bros., Inc. v. John Graham & Co.,* 412 F. Supp. 416 [E.D. Wash. 1976].)

The plaintiff alleged in his petition that the defendant intended to deprive the plaintiff of his good reputation and to bring him into professional disrepute. He further stated that he was not suspected of conduct or practices which would violate in any manner the disciplinary rules of the bar of the state of Kansas. Consequently, defendant suggests the violation of any discipli-

nary rule became relevant. Defendant contends that as a result of plaintiff's pleading the defendant may inquire as to the possibility of a violation of disciplinary rule 2-103 (B), which reads, "[A] lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client." We agree.

The requested information also would have been useful in preparation for cross-examination of any witnesses the plaintiff might call to testify concerning plaintiff's character or reputation. (98 C.J.S., Witnesses § 387, p. 150; 53 C.J.S., Libel and Slander § 210, p. 317.) In addition, the plaintiff has made the information sought a subject for discovery by seeking recovery for damage to his reputation, by pleading his good character, and by alleging his good standing in the bar.

Long ago, Justice Burch wrote that the general rule on the admissibility of evidence is "that which permits the introduction in evidence of facts which are relevant to facts in issue, and which explain facts in issue and relevant facts, and support or rebut inferences from such facts." (*Kaufman v. Christy,* 95 Kan. 554, 558, 148 Pac. 617 [1915].) We are of the opinion that the question was relevant for these purposes and appears reasonably calculated to lead to the discovery of admissible evidence.

The plaintiff argues that the question requests information of plaintiff concerning persons who are not parties to the suit and thus should not be discoverable. We disagree. The requested information involved plaintiff's law practice. Although plaintiff denied he was engaged in a legal partnership, the facts show plaintiff is listed as a partner on the firm stationery and thus holds himself out to the public as a partner. In addition, plaintiff testified that all income produced by each attorney listed as a partner on the firm letterhead is deposited in a common bank account. All expenses of the law firm are paid and any sums remaining are distributed to the attorneys on a previously agreed-on percentage. Thus, the requested information was available to plaintiff and is discoverable.

The ultimate question becomes whether the trial judge abused his discretion by imposing the extreme sanction of granting a default judgment against the plaintiff for his refusal to answer the question after being ordered to do so. The trial judge is em-

powered to impose such sanctions as are just, including but not limited to those set forth in K.S.A. 60-237(*b*)(2), as follows:

"(A)  An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(B)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

"(C)  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(D)  In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination."

It is well established that the dismissal of a cause of action is a drastic remedy to impose as a discovery sanction and should be used only in extreme circumstances. (*Vickers v. City of Kansas City,* 216 Kan. 84, 531 P.2d 113 [1975].) Further, a court should impose sanctions which are designed to accomplish the objects of discovery and not for the purpose of punishment. (*Jacuzzi v. Jacuzzi Bros., Inc.,* 243 Cal. App. 2d 1, 52 Cal. Rptr. 147 [1966].) However, the granting of default judgment against a party who refuses to allow discovery does not violate the due process clause of the Constitution of the United States, as plaintiff suggests, so long as the judgment was entered to compel discovery and not merely to punish. The object of a sanction should be to prevent the party against whom sanctions are being imposed from profiting by his own violation. (*Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 53 L.Ed. 530, 29 S.Ct. 370 [1909]; *City of Mobile v. Wooley,* 278 Ala. 652, 180 So. 2d 251 [1965]; *Unger v. Los Angeles Transit Lines,* 180 Cal. App. 2d 172, 5 Cal. Rptr. 71 [1960]; see, also, 6 A.L.R.3d 715.)

The Kansas legislature has seen fit to vest discretion in the trial judge as to which sanction he will impose. Thus, the trial judge will be reversed only where no reasonable man would take the view adopted by the trial court.

The appellate courts of this state have previously handed down three decisions involving the ultimate sanction of judgment by default. (See *Vickers v. City of Kansas City,* supra; *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449 [1974]; *Prather v. Olson,* 1 Kan. App. 2d 142, 562 P.2d 142 [1977].) From those cases, several tests emerge to aid in ascertaining whether or not a

trial court abused its discretion in granting default judgment.

Initially it must be ascertained whether the discoverable material goes to a dispositive issue in the case. Clearly in the case at bar the question does not go to a dispositive issue. The trial court should next ascertain whether or not the parties seeking discovery may be protected by the imposition of a sanction short of dismissal. This necessarily requires the trial judge to determine whether or not there are other appropriate sanctions. The plaintiff suggests to this court (he did not suggest any alternatives to the trial court) the possibility of two sanctions. First, he suggests that the trial court could have instructed the jury that the contributions were made. That alone would not have been sufficient. The size of the contribution was necessarily material, as were the facts surrounding the contribution. Second, plaintiff suggests that the information sought was available through alternative sources and that the trial judge could have ordered plaintiff to pay the costs of deposing the candidates. We do not deem that an appropriate alternative. The defendant was entitled to know exactly who made the contribution, if any, the manner in which it was made, and all of the facts surrounding any understanding which may have existed between the recipients and the donors. That information may not have been fully available from any source other than plaintiff. A number of alternative sanctions that would have had the same ultimate result as dismissal were available. For instance, the trial judge could have stayed the case until the question was answered, or he could have refused to allow plaintiff to introduce any evidence in the relevant areas. Either of these sanctions would have resulted in plaintiff's not being allowed to prove he was damaged.

The requested information was not cumulative nor merely corroborative. We do not believe that any appropriate sanctions short of dismissal were available which would have protected defendant.

In addition to the above tests, our Supreme Court requires that an opportunity for a full hearing be given to the party refusing to allow discovery to enable him to show good faith. Plaintiff in this case was granted an opportunity for a full hearing and was clearly and fully advised what the consequences would be if he continued to refuse to answer the question. There was never an issue that plaintiff was attempting to comply in good faith with the

order. Plaintiff was willfully in default and willfully continued to refuse to answer the question after being fully advised as to what the consequences would be if he persisted. The trial judge had no viable alternative to dismissing the action, and we find that the trial court did not abuse its discretion in dismissing the plaintiff's cause of action.

Affirmed.