(589 P.2d 643)

No. 49,394

MANSFIELD PAINTING AND DECORATING, INC., *Appellee,* v. BUDLAW SERVICES, INC., and LLOYD A. WINSLOW, *Appellants.*

Opinion filed January 26, 1979.

*Robert L. Taylor,* of Hutchinson, for appellants.

*John C. Nodgaard* and *H. Allan Caldwell,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for appellee.

Before ABBOTT, P.J., SPENCER and PARKS, JJ.

ABBOTT, J.: This is an action brought by plaintiff corporation for actual and punitive damages against a former director and his principally owned corporation for breach of contract, gross and wanton negligence, fraud, and breach of fiduciary duty.

The trial judge rendered a judgment by default against the defendants, pursuant to K.S.A. 60-237, for failure to comply with discovery orders. Evidence was then heard by the trial judge, who awarded actual damages of $6,308.87 and punitive damages of $5,000 to the plaintiff. The defendants appealed, arguing that the court lacked jurisdiction, and that the court erred in rendering default judgment, in not granting a continuance, and in rendering a judgment for compensatory and punitive damages.

1. Defendants first argue that the trial court did not have jurisdiction over the "issues" in this case. This argument is based on plaintiff's failure to comply with statutory procedure in amending its petition. Plaintiff first filed a petition which de-

fendants concede was properly served. Defendants answered and counterclaimed for a debt due from plaintiff. Plaintiff then filed its first amended petition without obtaining either the leave of court or the written consent of the adverse party as required by K.S.A. 60-215(a). The first amended petition changed the case from an injunction action to its present form and so involved a new and different cause of action from the original petition. Later, by oral motion heard ex parte, plaintiff obtained permission of the court to file a second amended petition which enlarged the first amended petition. Defendants' attorney, whose services were subsequently terminated by defendants, was served a copy of the first amended petition. The second amended petition was served on defendants by summons on March 2, 1977, as though it had been an original action. Defendants were not represented by counsel when the second amended petition was served. Defendants did not attempt to file an answer to either the first or second amended petition until the morning of trial.

If we understand defendants' argument correctly, they contend that the filing of the first amended petition without leave of court deprives the court of jurisdiction since it involved different subject matter than the original petition, and that if the court is without jurisdiction on the first amended petition the fact it granted permission to file the second amended petition would not confer jurisdiction. Defendant correctly points out that K.S.A. 60-207 requires that a motion which is not made during a hearing or a trial *shall* be made in *writing,* and that the oral application for ex parte permission of the court to file a second amended petition does not comply with the statutory requirements.

Defendants concede that they are unable to show any prejudice as a result of plaintiff's failure to follow statutory procedure in amending its petition. The original petition and second amended petition were personally served on the defendants and the first amended petition was served on defendants' counsel. No objection was raised by defendants or their counsel concerning the amended petition prior to trial.

We are of the opinion the defect here is not jurisdictional in nature (*Avco Financial Services v. Caldwell,* 219 Kan. 59, 547 P.2d 756 [1976]) and certainly does not involve subject matter jurisdiction. K.S.A. 1978 Supp. 20-301, *et seq.* Therefore, the defendants, having failed to raise the issue in the trial court, are

now barred from raising it on appeal. *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978); *In re Estate of Barnes,* 218 Kan. 275, 543 P.2d 1004 (1975). The defendants further waived the defense of lack of personal jurisdiction because of their failure to assert the defense within the time prescribed by statute. *Haley v. Hershberger,* 207 Kan. 459, 465, 485 P.2d 1321 (1971).

2. Defendants next complain that the trial court abused its discretion in rendering a default judgment against defendants for failure to make discovery.

After the suit was filed, plaintiff sought to obtain its records and ledgers from defendants by filing a motion for production of documents. Defendants requested and received several continuances over a two-month period until the court issued an order to produce the documents. Most of the documents sought were transferred, but some key documents were not produced.

A second motion for production and a set of interrogatories were served on defendants in March. There was no response. Plaintiff notified defendants that if they failed to appear for trial plaintiff would seek default judgment. The case was set for trial and defendants did not appear at the appointed time. Default judgment was entered against defendants, but the judgment was set aside when defendants appeared later the same morning. The court in setting aside the judgment granted defendants' oral motion for a continuance in order to grant defendants additional time to obtain counsel.

Plaintiff next filed a motion to compel discovery. When the defendants failed to appear on or respond to the motion, the trial court ordered defendants to produce the documents and answer the interrogatories. That order was personally served on defendants, but was disregarded by them.

The case was then set for trial on May 20, 1977, and a subpoena duces tecum was personally served on the defendant Winslow, ordering him to bring additional records with him. However, he failed to do so.

At the trial, plaintiff made an oral motion for default judgment. The trial court allowed the defendants a hearing to show excusable neglect or good faith in failing to make discovery. The defendants attempted to show they had been hampered in filing an answer, producing the documents, and in answering inter-

rogatories by not having an attorney and by being unable to obtain their file from a former attorney. The trial judge informed defendants that he was not satisfied with their evidence and offered to allow additional evidence to be presented at 2:00 p.m. that day. Defendants declined to offer additional evidence and default was entered against defendants. Among other things, defendants suggest that the court could have imposed lesser sanctions.

This court recently reviewed the question of abuse of discretion as it relates to rendering a judgment by default for failure to comply with discovery orders in *Fields v. Stauffer Publications, Inc.*, 2 Kan. App. 2d 323, 578 P.2d 1138 (1978), where it was stated at 327-329:

"The ultimate question becomes whether the trial judge abused his discretion by imposing the extreme sanction of granting a default judgment against the plaintiff for his refusal to answer the question after being ordered to do so. The trial judge is empowered to impose such sanctions as are just, including but not limited to those set forth in K.S.A. 60-237(b)(2), as follows:

'(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

'(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

'(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

'(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.'

"It is well established that the dismissal of a cause of action is a drastic remedy to impose as a discovery sanction and should be used only in extreme circumstances. (*Vickers v. City of Kansas City*, 216 Kan. 84, 531 P.2d 113 [1975].) Further, a court should impose sanctions which are designed to accomplish the objects of discovery and not for the purpose of punishment. (*Jacuzzi v. Jacuzzi Bros., Inc.*, 243 Cal. App. 2d 1, 52 Cal. Rptr. 147 [1966].) However, the granting of default judgment against a party who refuses to allow discovery does not violate the due process clause of the Constitution of the United States, as plaintiff suggests, so long as the judgment was entered to compel discovery and not merely to punish. The object of a sanction should be to prevent the party against whom sanctions are being imposed from profiting by his own violation. (*Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 53 L.Ed. 530, 29 S.Ct. 370 [1909]; *City of Mobile v. Wooley*, 278 Ala. 652, 180 So. 2d 251 [1965]; *Unger v. Los Angeles Transit Lines*, 180 Cal. App. 2d 172, 5 Cal. Rptr. 71 [1960]; see, also, 6 A.L.R.3d 715.)

"The Kansas legislature has seen fit to vest discretion in the trial judge as to which sanction he will impose. Thus, the trial judge will be reversed only where no reasonable man would take the view adopted by the trial court.

"The appellate courts of this state have previously handed down three decisions involving the ultimate sanction of judgment by default. (See *Vickers v. City of Kansas City,* supra; *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449 [1974]; *Prather v. Olson,* 1 Kan. App. 2d 142, 562 P.2d 142 [1977].) From those cases, several tests emerge to aid in ascertaining whether or not a trial court abused its discretion in granting default judgment.

"Initially it must be ascertained whether the discoverable material goes to a dispositive issue in the case. . . . The trial court should next ascertain whether or not the parties seeking discovery may be protected by the imposition of a sanction short of dismissal."

As stated in *Fields,* the court should also determine whether the requested documents and information sought in the interrogatories was cumulative or merely corroborative. In this case the information sought was neither cumulative nor corroborative. In addition, the party refusing to allow discovery must be given a full hearing to enable that person to show good faith. As noted earlier, defendants were given a full and complete hearing and, in the opinion of the trial judge, failed to show good faith.

Two factors are of importance to note. First, the defendants did not brief the question of whether written notice must be given to the party failing to make discovery before default judgment can be rendered against them. While defendants did raise that question at oral argument, having failed to raise the issue in their brief and thereby give the other party an opportunity to brief the issue, they may not now raise the issue. We are therefore not deciding whether written notice must be given before the sanction of default judgment is imposed. We do determine that the court had authority to impose the sanction of default judgment against the defendants for failure to make discovery. *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d at 329. Second, the case had been set for trial and both the defendants and their counsel had been informed that no further continuances would be granted, leaving the court with no alternative but to postpone the trial if defendants were given additional time to comply with the court orders. Thus, the trial judge was faced with the defendants' failure to comply in a situation where a significant part of the requested material and information went to dispositive issues in the case, and where the court had no effective sanctions available. The

court could have continued the case, giving defendants additional time to produce and answer under threat of default, and assessed attorney fees and costs. However, on two separate occasions the court had already ordered the defendants to produce and answer the interrogatories, and those orders, as well as a subpoena duces tecum, had been ignored.

The evidence in this case can be fairly interpreted as demonstrating a deliberate course of delay by the defendants. While others might give a different interpretation to the events of the months before trial, it is not this court's function on appeal to weigh conflicting evidence. We are of the opinion the trial judge did not abuse his discretion in rendering judgment by default against the defendants for failure to make discovery. We further note the record indicates that the issues were presented so fully at the damages hearing that for all practical purposes there was no default. The trial judge recognized as much when he noted in the court records: "Case actually tried as tho contested not [by] default."

3. Defendants' contention that the trial judge abused his discretion in not granting a continuance when one was requested on the day of trial is without merit.

It has long been recognized in Kansas that granting or denying a motion for continuance is within the discretion of the trial court. *Davis v. Wilson,* 11 Kan. 74 (1873). An abuse of discretion will be found by an appellate court only when "no reasonable man would take the view adopted by the trial court." *State v. Wilkins,* 220 Kan. 735, Syl. ¶ 4, 556 P.2d 424 (1976).

In the case of *Houser v. Frank,* 186 Kan. 455, 350 P.2d 801 (1960), the defendant knew one month before trial that it would be necessary to retain an attorney to represent him if he desired counsel. Defendant retained counsel at 3:30 p.m. on the afternoon before trial and the next day argued vigorously for a continuance. The requested continuance was denied. The Supreme Court affirmed that decision, stating the defendant had adequate notice of his need for substitute counsel and the impending trial date. This result is supported by other Kansas opinions which require a party seeking a continuance to demonstrate diligence in its efforts to bring the case to trial. See *Fouts v. Armstrong Commercial Laundry Distributing Co.,* 209 Kan. 59, 495 P.2d 1390 (1972); see also 17 Am. Jur. 2d, Continuance § 12, p. 129.

Here, defendants, having discharged their attorney of record, had known since December 1976 that they would be employing new counsel for the trial. Counsel for defendants was allowed to withdraw on January 7, 1977. The case had been previously set for trial on April 28, 1977, and default judgment entered against defendants for their failure to appear. The default judgment was set aside and the case rescheduled for trial on May 17, 1977, to give defendants opportunity to secure counsel. On May 12, 1977, defendants requested a continuance which was granted until May 20, 1977. The defendants were informed then that no further continuances would be granted. On May 17, 1977, defendants' new counsel appeared and informally requested a continuance, which was denied. On May 20, 1977, the trial date, defendants again requested a continuance. The trial judge heard evidence from defendants as to why they were not prepared, denied the motion for a continuance and started the trial at 2:00 p.m. that day. We cannot say that no reasonable person would take the view of the trial judge and therefore do not find that he abused his discretion.

4.   Defendants next argue they were denied due process in that they were not given a "fair" trial for the following reasons:

A)   The denial of the right to try the issue of damages before a jury. Defendants did not request a jury trial either in their pleadings or at trial. Having failed to timely request a jury trial as required by statute, K.S.A. 60-238 acts as a waiver of their right to do so. *Horton v. Montgomery Ward,* 199 Kan. 245, 428 P.2d 774 (1967).

B)   The denial of their request for a pretrial conference. Likewise, defendants did not request a "discovery" conference pursuant to Rule No. 136 (223 Kan. lxii). They did request a *pretrial* conference on the morning of trial. Such a conference must be held at least two weeks prior to trial (Rule No. 140, 223 Kan. lxv). That motion was denied, and rightly so. Defendants, by not timely requesting a conference, waived the same.

C)   The trial court's procedure in determining damages. If we understand defendants' third point dealing with their argument that defendants were denied due process, they object that the scope of the trial which started on June 3 and ended on June 17, 1977, went beyond the question of damages and into the matter of liability itself. Many of the issues of liability heard went to the

question of punitive damages. The trial judge did note on the record that there was actually a trial and that defendants were permitted to proceed as though they were "trying the case rather than having a hearing on default." Although the procedure followed was unorthodox, it did not result in prejudice to the defendants.

5. Defendants next attack the findings of the trial court as being unsupported by the evidence and the law.

When an appeal attacks the adequacy of the trial court's findings, it faces a heavy burden, for our scope of review is limited to ascertaining whether there is substantial competent evidence to support the trial court's findings and not with whether the evidence might have supported contrary findings. We do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 259, 531 P.2d 428 (1975). Nor can this court nullify a trial court's belief of evidence or determine the persuasiveness of evidence which the trial court may have believed. *Fox v. Wilson,* 211 Kan. 563, 507 P.2d 252 (1973).

Defendants complain that their testimony was more credible than plaintiff's and that their testimony was undisputed on some points. The trier of facts is not obligated to accept and give effect to evidence which he considers to be unreliable, even if such evidence is uncontradicted. *Beard v. Montgomery Ward & Co.,* 215 Kan. 343, 348, 524 P.2d 1159 (1974). The trial court here plainly did not believe defendants' testimony on a number of points and commented that some of it was "simply incredible" in the face of other evidence. Plaintiff introduced evidence that defendants were in violation of the strict fiduciary duty which Kansas imposes on the officers and directors of a corporation as a result of the fiduciary relationship. *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. at 259-260; *Stewart v. Harris,* 69 Kan. 498, 77 Pac. 277 (1904). Evidence was introduced that defendants made a secret profit from a van ultimately sold to the corporation on a lease-purchase agreement; that expensive life insurance policies were purchased from companies which defendant Winslow represented in his insurance business, and that those premiums were paid by defendants out of plaintiff's funds at a time when plaintiff's company was unable to meet its other financial obligations; and that commingling of funds occurred. The bur-

den then shifted to defendants to firmly establish the fairness of these transactions by fully disclosing the facts and circumstances underlying them. *Stewart v. Harris,* 69 Kan. 498; *Geddes v. Anaconda Mining Co.,* 254 U.S. 590, 65 L.Ed. 425, 41 S.Ct. 209 (1921); 76 Am. Jur. 2d, Trusts § 230, p. 453. The trial court found that defendants failed to do so.

The award of damages for the incorporation fees and monthly service charges was within the court's discretion, for an unfaithful fiduciary is liable for the amounts that have been paid from the very beginning if the fiduciary's conduct has been untrustworthy from the start, and the fiduciary may also be required to forfeit the compensation he otherwise would have earned. *Bessman v. Bessman,* 214 Kan. 510, 520 P.2d 1210 (1974). Such conduct by a fiduciary may include commingling of funds (*In re Estate of Jones,* 174 Kan. 506, 257 P.2d 116 [1953]) or self-dealing for his own profit (*Vincent v. Werner,* 140 Kan. 599, 38 P.2d 687 [1934]). As to the life insurance premiums, see *Dreiling v. Home State Life Ins. Co.,* 213 Kan. 137, 515 P.2d 757 (1973). Without unduly prolonging the opinion, it is sufficient to say that we have examined the record and find there is substantial competent evidence to support the trial court's findings.

6. Defendants argue that any liability should have been imposed upon the defendant corporation and not upon defendant Winslow on the theory that since plaintiff benefited by services performed by the corporation it should be estopped to deny that corporation's existence by seeking recovery from Winslow individually. This point was not raised at trial and need not therefore be considered on appeal. *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527. Even if we were to consider the argument, it has no merit in view of the pleadings and the evidence presented at trial. In plaintiff's second amended petition, the defendants were put on notice that plaintiff intended to use the alter ego doctrine in an attempt to pierce the corporate veil and hold the defendant Winslow personally liable as well as to show that the corporation was no longer in existence and was not legally in existence at the time the acts complained of took place. In defendants' answer, defendant Winslow admitted personal responsibility for the acts of the defendant corporation. At trial, defendant Winslow again took full responsibility for the acts committed by the corporation, a fact recognized by the trial court.

By the time of trial, the defendant corporation's charter had been revoked.

We also note the trial judge specifically found there had been a commingling of plaintiff's funds with those of defendant Winslow, and that it was defendant Winslow who had breached the fiduciary duty. Therefore, he is directly liable whether the corporation is also liable or not. *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, 567 P.2d 1337 (1977).

Affirmed.