52 Cal.Rptr. 147]

[Civ. Nos. 22233, 22321. First Dist., Div. One. June 22, 1966.]

RODOLFO JACUZZI et al., Plaintiffs and Appellants, v. JACUZZI BROS., INCORPORATED, et al., Defendants and Appellants.

Nathan G. Gray and Richard F. Swisher for Plaintiffs and Appellants.

Joseph L. Alioto, Walter F. Calcagno, Richard Saveri, Gerhard Stoll and Frederick P. Furth for Defendants and Appellants.

SIMS, J.—The proceedings reviewed herein arise out of a stockholders' derivative suit brought by the plaintiffs, stockholders of the defendant Jacuzzi Bros., Incorporated, on behalf of that corporation against five individuals,[1] named as directors and employees of the corporation who with their families control the majority of the shares of the corporation, and against Jacbros, S.A., Geneva, a Swiss corporation. It is alleged that the defendant Candido Jacuzzi, as general manager and director of the corporation, dominated and controlled the other defendants. The first cause of action seeks rescission of a sale of its foreign holdings by the domestic corporation, hereinafter referred to as Jacuzzi, to the Swiss corporation, hereinafter referred to as Jacbros, and an accounting on the principal ground, among several, that the consideration was inadequate. A second cause of action sought recovery on behalf of the corporation from Candido Jacuzzi because of an unfair royalty contract he secured from the company; a third cause of action sought a declaration of rights; and a fourth cause of action sought the removal of Candido as a director. As hereinafter appears the last three causes of action were subsequently dismissed.

The sale of the corporate assets was made May 30, 1959. Apparently the matter was thereafter investigated by the plaintiffs, minority but substantial stockholders, and suit was filed October 26, 1961, after refusal of their demand for a stockholders' meeting to revoke the sale. The defendants filed an answer which admitted the status of the respective defendants as alleged, the sale of the stock and contract rights from Jacuzzi to Jacbros, but denied any malfeasance and asserted that the court had no jurisdiction over Jacbros.

Discovery proceedings included two motions to produce documents which were complied with by the defendants and 29 depositions. The particular matters brought before this court stem from a third motion to produce documents which was instituted by notice of motion filed November 8, 1962, and from interrogatories served on defendants February 4, 1963. After proceedings regularly taken to that end a written order was signed and filed January 2, 1963, granting the motion for

[1]Joseph Jacuzzi died January 5, 1965, and the representative of his estate has been substituted in his stead.

production of documents. On February 7, 1963, plaintiffs filed a notice of motion for sanctions against Jacuzzi, Candido and Jacbros for failure to comply with the order for production of documents. Hearings were regularly held and continued on this motion on February 15 and 27 and March 5 at which time the three defendants were given 30 days to comply. On April 5, 1963, proceedings were continued to May 7 and then to May 27, while those defendants petitioned this court for a writ of prohibition or other relief which was denied by Division Two of this court on April 22, 1963, and by the Supreme Court on May 22, 1963 (1 Civ. 21268). On May 27, 1963, a final hearing was held on the motion for sanctions for failure to comply with the motion for production of documents, and the matter was continued for submission and decision.

Meanwhile the defendants filed a motion for additional time to answer the interrogatories which had been served on February 4, 1963. This motion resulted in a continuance to April 15, 1963, to determine whether there would be compliance by that time. In the interim the defendants filed objections to the interrogatories which were overruled. On April 15, 1963, answers had been filed by Jacuzzi, and the matter was continued one week, at which time Candido filed answers. The same were reviewed by the court at hearings on April 22 and April 23, and a minute order of the latter date requiring further answers was incorporated into a written order signed and filed April 24th. On April 29, 1963, defendants' objections to the latter order were heard and denied. On May 21, 1963, plaintiffs filed their notice of motion for sanctions against all of the defendants for failure to answer interrogatories in compliance with the order of April 24th. On May 24th additional answers were filed by Candido. The matter was heard and argued on May 27, 1963, together with the motion for sanctions for failure to produce. On June 5, 1963, other defendants who had not answered joined in the answers filed by Jacuzzi on April 15th.

The matters were regularly continued to June 21, 1963, at which time they were submitted and a minute order was made as follows: ''Motions of Plaintiffs for sanctions are hereby submitted and each is granted as follows: Allegations of first cause of action in complaint and amendment thereto shall be taken to be established as alleged therein; answer to said first cause of action to be stricken and default judgment to be entered thereon; Allegations of said first cause of action that are incorporated into the second, third and fourth causes of

action of complaint shall be taken to be established and portions of answer relating thereto shall be stricken; issues remaining to be tried in this cause shall relate to the second, third and fourth causes of action except as above modified; . . . Plaintiff to prepare order. Counsel notified." These provisions were incorporated in a formal order signed and filed June 24, 1963, and entered June 26, 1963. On June 28, 1963, pursuant to a request therefor filed by plaintiffs the default of the defendants as to the first cause of action was entered.

On August 14, 1963, without notice to defendants and without their presence, the plaintiffs sought an "Order for Entry of Judgment." Evidence was introduced and the matter was continued to August 16 for further disposition. On that day plaintiffs filed a partial dismissal, dated August 14th and approved by the trial judge August 15th, which dismissed the second, third and fourth causes of action. A judgment was signed August 15th, filed August 16th and subsequently entered on August 19th. It ordered the restitution to Jacuzzi of assets of a then present fair market value of $5,408,101.05, income on the assets of $987,519.39, moneys expended for Jacbros of $289,966, interest on the foregoing sums of $146,967.04, or an aggregate of $6,823,553.48 with an offset of $699,578.92 for sums paid by Jacbros to Jacuzzi, leaving a net of $6,123,974.56. It further provided that the defendants, with the exception of Jacuzzi, were and each of them was liable for that sum less the value, as fixed in the judgment, of such assets as were returned; and awarded miscellaneous as well as taxable costs to plaintiffs and compensation to their attorneys computed at 20 percent of the first $2,000,000 in value received and at 10 percent of the balance.

On August 21, 1963, defendants served and filed their notice of motion for an order to vacate the order striking defendants' answer, to vacate and set aside default, to vacate and set aside judgment and to restore defendants' answer. This motion came on for hearing, as noticed, on September 12 and was continued to October 7 and then to October 17, 1963, when it was finally argued and submitted. On October 18, 1963, the court signed and there were filed a memorandum opinion and a written order, which incorporated the opinion by reference, granting the relief prayed for. The order recites that the relief granted is "subject to the conditions hereinafter stated" and "shall be effective upon the performance by said defendants of the following conditions:" the deposit with the court of the

assets referred to in the judgment, and such additional security as the court may require, and the consent to appointment of a disinterested auditor by the court to audit the books of the principal corporations and their subsidiaries. The order further provided for extending the 15-day period granted for compliance. The provisions thereof are hereinafter more particularly set forth.

Plaintiffs, on behalf of themselves and Jacuzzi, on December 16, 1963, filed a notice of appeal from this order and from orders theretofore granted which had extended the defendants' time for compliance. On January 6, 1964, plaintiff, and on January 14, 1964, defendants, filed their respective notices designating matters for the record on that appeal. Plaintiffs designate this notice of appeal as "a precautionary notice of appeal . . . from the probably nonappealable conditional order of October 18, 1963", and defendants assert that subsequent orders entered May 14, 1964, were the final appealable orders.

Meanwhile the defendants had manifested their intent to comply with the conditions of the order vacating the judgment. A consent and assignment executed by their attorneys was filed on October 18th, certificates of stock representing interests in Mexican, Canadian and Brazilian subsidiaries were deposited on the 31st, and the defendants secured an ex parte order extending their time for compliance to November 15th. A second deposit consisting of contract documents was made on November 13th and on the following day an order was made extending the time to November 29, 1963.

On November 20, 1963, defendants served and filed a notice of motion for an order that defendants had complied with the conditions of the earlier order. This matter was set for hearing on November 26th, at which time plaintiffs served and filed a notice of motion for an order enjoining the attorneys for defendants from representing Jacuzzi, and for an order enjoining defendants from controlling that corporation in the pending action. Hearing on the former motion was continued to December 9, and then at the request of the plaintiffs to December 20th. Orders were made extending defendants' time for compliance, and further documents were deposited on December 12th. On December 20th the court ordered all matters continued to January 17, 1964, and extended the time for compliance accordingly. On January 6, 1964, plaintiffs filed a notice of motion for order vacating the order of October 18, 1963, which adopted the particulars of an answer which they

had filed December 20, 1963, to the motion for compliance. On January 15th an assignment by Jacbros to Jacuzzi "in custodia legis" of the shares and contracts theretofore deposited was filed by defendants.

On January 17th a hearing was held on the three pending motions. The defendants' motion for an order of compliance and the plaintiffs' motion regarding the attorneys were submitted, and the latters' motion to vacate the October 18th order was continued to January 31st for submission. The time for compliance with the October 18th order was extended in open court to February 7, 1964. Subsequent orders extended the time to April 30th.

On April 9th the court restored the pending matters to the calendar for the purpose of hearing argument. On April 21, 1964, the court caused the following entry to be made in the minutes: "Court finds substantial compliance with order of October 18, 1963. However assets in custodia legis are to be appraised to determine whether additional security is required by the Court. The Court will announce the appointment of a disinterested international firm of certified public accountants to audit books, et cetera, as set forth in paragraph 4(c) of the order of October 18, 1963, not later than April 30, 1964. Motion of plaintiff for order enjoining attorneys from representing Jacuzzi Bros., Incorporated, and for order enjoining defendants from controlling the acts of said corporation is denied. Motion of plaintiff for order to vacate and set aside order of October 18, 1963, is denied."

On May 1, 1964, the court signed three separate orders, filed May 4th and entered May 14th, in connection with the foregoing motions. That made in response to defendants' motion recites in part: "It Is Hereby Ordered, Adjudged and Decreed As Follows: 1. That defendants have complied with that certain Order dated October 18, 1963 and entered October 21, 1963, in Vol. 88, page 13 (Reel) of the Official Records of Alameda County, State of California; 2. The order heretofore made on the 24th day of June, 1963, striking defendants' answers is hereby set aside and vacated; 3. The default of the defendants heretofore entered is hereby set aside and vacated; 4. The Judgment heretofore rendered on the 15th day of August, 1963, and entered on the 19th day of August, 1963, in Judgment Book Vol. No. 85 at page 3 (Reel), is hereby set aside and vacated; 5. The answers of said defendants on file herein are hereby restored and may stand as the answers of said defendants in this action; . . ."

Plaintiffs on May 28, 1964, filed their notice of appeal from the minute order of April 21, 1964, and from each of the formal orders filed May 4, 1964, and entered May 14, 1964. Thereafter defendants on June 12, 1964, filed a notice of cross-appeal, pursuant to rule 3 of the Rules on Appeal, from the judgment rendered August 15, 1963, and entered August 19, 1963. On July 31, 1964, plaintiffs filed their notice of motion to dismiss the latter appeal with the Supreme Court. The matter was regularly transferred to this court, and upon hearing Ocber 27, 1964, it was ordered continued for consideration with the appeal on the merits. Since this appeal becomes moot if the order vacating the judgment is sustained, attention is first directed to plaintiffs' appeal from the final order vacating the judgment.

Plaintiffs contend herein that the conditional vacating order was void as in excess of the jurisdiction of the court because there was no statutory or legal ground for setting aside the judgment. They take issue with defendants' assertions that justification for vacating the judgment may be predicated upon (1) the court's mistake or misapprehension as to the state of the record, particularly in regard to the discovery which had been granted prior to the time sanctions were imposed, and in respect of alleged concealment by plaintiffs of factors affecting the value of the Mexican subsidiary; or (2) a violation of due process of law by imposing the ultimate sanction without warrant; or (3) an abuse of discretion in imposing such sanction; or (4) insufficiency of the evidence to justify such sanction.

Furthermore plaintiffs assert that even if the conditional order were proper, the final order is invalid because the defendants (1) never fully complied with its terms by depositing all that was required, and (2) failed to secure valid orders extending the time for compliance with the conditions.

A consideration of these matters and their collateral manifestations as advanced by the parties leads to the conclusion that the trial court had power and jurisdiction to vacate the judgment, and acted within the proper exercise of its discretion in substituting the conditions imposed in the order of October 18, 1963, for the ultimate sanctions it originally imposed.[2] The matter being at large there was no error in denying the motion to enjoin the attorneys. It is concluded that the orders should be affirmed.

[2] A rehearing was granted in this case to permit the parties to comment on the relevance and propriety of references in the original opinion to the trial court's power to entertain a motion for new trial and to

*The vacating order of October 18, 1963 was a proper exercise of the trial court's jurisdiction.*

Understanding of the heart of the controversy at issue in this case is enhanced by a review of the autopsy reflected in the three opinions in *Key System Transit Lines* v. *Superior Court* (1950) 36 Cal.2d 184 [222 P.2d 867]. Therein the trial court was requested to exercise its discretion to dismiss the action for want of prosecution pursuant to the provisions of section 583 of the Code of Civil Procedure, because the plaintiff had failed to bring the action to trial within two years after it was filed. So here, because of the alleged default of defendants in the production of documents and in furnishing answers to interrogatories, the trial court was requested to exercise its discretion to order their default under the provisions of section 2034 of that code. In *Key System Transit Lines*, as in this case, the relief sought was granted. Sixteen days later the plaintiff filed a motion to vacate the order of dismissal. This motion was granted and the case was set for trial. The defendant sought a writ of prohibition contending that the court had no jurisdiction to vacate the prior order of dismissal. The issues, as framed, are the same as those presented here.

"It is the theory of the petitioner that the court exceeded its jurisdiction in vacating the order of dismissal; that the order was appealable [citation], and was subject to be set aside only on appeal or by a motion pursuant to section 473 of the Code of Civil Procedure; that neither the motion to vacate nor the order granting the motion was expressly or otherwise based on any ground permitted by section 473, and that both the motion and the order were merely reagitation and involved a determination of the same issues presented on the hearing of the motion to dismiss. The respondent contends that although section 473 was not expressly mentioned on the motion to vacate, the facts as shown by the record indicate that the court's jurisdiction could properly be deemed to have been exercised under that section or pursuant to its inherent power, and that this court should conclude that it was so exercised." (36 Cal.2d at pp. 185-186.)

"'Plaintiffs' sole ground for the motion to vacate was that the original order was an abuse of discretion resulting in in-

---

modify and vacate its orders and judgment in the exercise of such power, because such matters had not been briefed or presented in oral argument. A question has been raised as to whether the facts justify relying upon the procedure for a new trial, and the opinion has been modified accordingly without changing the ultimate result.

justice. The motion was supported by an affidavit explaining plaintiffs' failure to prosecute the action. The affidavit relied upon the crowded trial calendar and emphasized that the trial court had discretion to deny the motion to dismiss. Nothing was brought before the trial court in the notice of motion to vacate or the supporting affidavit that would justify an order under section 473, . . .'' (*Id.*, at p. 193.)

''The record shows that the following additional matters were considered on the motion to vacate the order: On January 9, 1947, and after the filing of the defendant's answer, a memorandum to set the case for trial was filed. On December 22, 1947, a stipulation was signed by the attorneys for both parties selecting January 12, 1948, as the trial date, and the case was set for trial accordingly. The defendant's motion to dismiss was made four days before the trial date agreed upon and the case was put off calendar because of the pendency of the motion. Because of the congested state of the trial calendar an earlier date for the trial could not be procured.

''In the vacating order the court recited the additional matters and 'upon a more complete presentation of the facts' concluded that there was no unnecessary delay in bringing the action to trial, nor any fault on the part of the plaintiffs, nor any prejudice to the rights of the defendant, and that to dismiss the action without a hearing on the merits would work an injustice upon the plaintiffs.'' (*Id.*, at p. 186.)

On these facts two justices concluded as follows: ''The arguments of the petitioner invoke application of the policy requiring finality of judgments and orders. That policy generally controls where a judgment or order is entered after a trial on the merits of the litigation. [Citations.] But the policy has not been deemed controlling where the judgment or order set aside was in the exercise of a discretionary power not based on the merits of the action. The recognized policy in such cases is that which requires a trial on the merits wherever possible. The latter policy has been said to be the basis for the enactment of the provisions of section 473. [Citations.] In giving effect to that policy appellate courts have generally refrained from interfering on jurisdictional grounds with the trial court's reconsideration of a discretionary order not based on the merits of the litigation. [Citations.]

''This court has also recognized the power of the trial court independently of statute to set aside a default judgment entered through the court's inadvertence. [Citation.] In 1 Freeman on Judgments (5th ed.) p. 432, it is said that where

the court is deceived or is laboring under a mistake or misapprehension as to the state of the record or as to the existence of extrinsic facts upon which its action is predicated, it has inherent power to vacate a judgment which would not otherwise have been rendered. . . . Here the later order was in effect based on the inadvertence and mistake of the court in overlooking matters of record and facts within the court's judicial knowledge. On its face the record does not disclose invalidity for lack of jurisdiction. The order was within the court's general jurisdiction. It was made in the exercise of its inherent power under that jurisdiction. Factual sufficiency to support the exercise of the power is not controverted by the record. The intendments which govern are controlling to support the propriety of the exercise of jurisdiction.'' (*Id.*, pp. 187-188.)

The then Chief Justice and one associate in a concurring opinion stated: ''The court's jurisdiction to proceed with the trial depends on whether it had power to vacate the prior judgment of dismissal. In addition to the authority given by Code of Civil Procedure section 473 to set aside judgments or orders which are void, or are the result of clerical mistake or of a party's mistake, inadvertence, surprise or excusable neglect, a trial court has inherent power under some circumstances to set aside judgments and orders which it has made inadvertently and which are not actually the result of the exercise of judgment. [Citations.] Error which is essentially judicial, however, rather than clerical or inadvertent, may not be corrected under the court's inherent power but only under appropriate statutory procedure, and a court may not vacate a judgment or order merely because it failed to consider or give the proper weight or effect to some evidence before it. [Citations.]

''Here the order of vacation does not affirmatively show that it was made on grounds recognized by section 473 or on the ground that there had been some judicial inadvertence. However, since petitioner is making a collateral attack upon the order, we must indulge in every presumption in support of the order, and any condition of facts consistent with its validity and not affirmatively contradicted by the judgment roll will be presumed to have existed. [Citations.]'' (*Id.*, pp. 188-189.) They concluded that there was nothing in the record to rebut the presumption of validity which supported the order on collateral attack.

The present Chief Justice, with two associates, dissented in an opinion which recognizes: ''In addition to its powers under

section 473, the trial court may correct an inadvertent mistake within a reasonable time after entry of the judgment or order. 'If the judgment was entered . . . through the inadvertence or improvidence of the trial court, it had the power independent of statute, to correct the mistake by amending or setting aside the judgment, [citations], as this presents no question of judicial review upon the merits. However, judicial error which occurs in the rendition of orders or judgments which are the fault of an exercise of judicial discretion may not be corrected except by statutory procedure. (*Stevens* v. *Superior Court,* 7 Cal.2d 110 [59 P.2d 988].)' (*Phillips* v. *Trusheim,* 25 Cal.2d 913, 916 [156 P.2d 25].)'' (*Id.,* p. 192.) They concluded: ''The trial court has no power to correct judicial error in a final judgment or an appealable special order after final judgment except as provided by statute. [Citations.] Even if the trial court acted hastily and ill-advisedly in making its first order, it is not for this court to disregard settled rules of procedure and practice. Such disregard can result only in confusion. As this court said in one of its earliest cases on this subject, 'There must be some point where litigation in the lower Court terminates, and the losing party is turned over to the appellate Court for redress.' (*Coombs* v. *Hibberd,* 43 Cal. 452, 454.)'' (*Id.,* pp. 195-196.)

Turning again to the facts in this case it appears that the original exercise of discretion by the trial court was that incorporated in the formal order signed and filed June 24, 1963, and entered June 26, 1963, which granted the sanctions. ▉ Among the points raised by plaintiffs is the assertion that by waiting until August 21, 1963, after the judgment was entered, the defendants invited the judgment and elected to suffer the sanctions rather than offer further disclosure. The order, however, discloses that there were issues remaining to be tried in the case relating to such of the matters at issue in the second, third, and fourth causes of action in the complaint as were not covered by the ruling which established the allegations of the first cause of action, and that it provided for the default as to that cause of action only. Since there is generally only one judgment in an action this left open questions to be resolved on further hearing. It is questionable whether the order imposing sanctions was appealable. (*Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]; *Munson* v. *Singer* (1965) 238 Cal.App.2d 697 [48 Cal. Rptr. 167]; *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172, 180 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71]; *Unger*

v. *Los Angeles Transit Lines* (1959) 170 Cal.App.2d 706, 708 [339 P.2d 586].) The defendants therefore were well within their rights in awaiting a further hearing, or, as eventuated, a judgment, before launching a further attack on the order for sanctions.

Defendants' motion, as has been stated, was addressed not only to vacating the judgment, but also to vacating the order which had stricken their answer, and to setting aside the default and to restoring their answer. It was "made on the grounds, each and all, that said orders and Judgment heretofore made and entered by the Court (1) are a denial of due process of law; (2) are against law; (3) are punitive in nature; (4) are an abuse of the Court's discretion by which defendants have been prevented from having a trial on the merits; (5) irregularity in the proceedings of the Court wherein the Judgment was entered; (6) insufficiency of the evidence to justify the aforesaid orders and judgment made and entered by the Court." It was purportedly based upon all the records of the case, and such other documents and evidence as would be adduced in support of the motion. There is no record of the hearings allegedly held on this motion on September 12 and October 7, 1963. A transcript of hearing on October 17, 1963, reflects argument and unverified statements only. On May 20, 1964, an order was made augmenting a minute order of October 7, 1963, by adding the words, "no evidence having been offered or received in behalf of any party to this cause," to a recital of argument and submission. This fails to give any effect to the declaration of one of defendants' attorneys, to which are attached voluminous exhibits. This declaration was dated September 16, 1963, and marked as received September 18, 1963, although not filed until October 30, 1963, after the decision on the motion.

The opinion dated October 18, 1963, which the order incorporated by reference, indicates that the court reconsidered the imposition of sanctions and felt that it was "too harsh." It suggests that there were issues raised as to the valuation of the assets referred to in the judgment, and a question of whether the court had abused its authority in imposing the sanctions, and recites that the principle that all litigation be tried on its merits called for equitable relief.[3]

---

[3] The full opinion reads as follows: "A careful consideration of the motion before this Court has compelled the Court to an analysis of its earlier action.

"While there was certainly an air of indifference toward the orders of the Court by some of these Defendants, I now feel the imposition of sanc-

The declaration referred to directed the court's attention to depositions and information furnished to plaintiffs which may not have been reflected in the court's records. No reason is suggested why this information was not made available to the court in the presanction hearings. It also asserts that settlement negotiations and further discovery was proceeding on the eve of the entry of judgment, and attempts to substantiate defendants' contention, repeated throughout the proceedings, that it was impossible to furnish discovery as to certain foreign records.

On the foregoing record unless the principle suggested by the two justices in *Key System Transit Lines* that the trial court has greater power to reconsider exercise of discretion not based upon the merits of the litigation than it does to reconsider other judicial acts, is unqualifiedly accepted, it is necessary to look further for controlling precedents. The court correctly evaluated its ·position as "tenuous in terms of its authority to act."

In support of the order defendants unequivocally state that the default judgment was void. The only warrant for

---

tions too harsh when the position, attitude and conduct of all the defendants are looked at. Striking of the Answer and entry of default of all the defendants was the ultimate sanction. This resulted in a judgment in excess of Six Million Dollars without a trial on the merits.

''Defendants have raised issue with regard to valuations of the properties and assets involved and also have asserted there was an abuse of authority in imposing the sanctions. The record is replete with failures of defendants to heed or comply with orders of the Court and also with unilateral attempts by Plaintiffs to bring the action to a conclusion on its merits.

''The entire course of this litigation may have, therefore, influenced this Court to impose the final sanctions available to it. Yet, despite all this, the long standing principle that all litigation be tried on its merits, calls for some equitable relief. While the Court is aware its position is tenuous in terms of its authority to act, it now does order the judgment vacated, the default set aside, and the order of June 24, 1963, striking Defendants' answer is set aside and vacated, subject to certain conditions. Certainly the efforts of Plaintiffs deserve every consideration on the state of the record in this case.

''While Judges and Courts may differ, and even err at times, they are not to be criticised for seeking to effect justice in accordance with law and to permit to all litigants their day in Court.

''In order that Plaintiffs not be unduly injured by reason of certain activities on the part of Defendants in removing assets from the State, equity requires that this order be conditioned to preserve to Plaintiffs' the result of their efforts to date. (See: DOUGLASS v. TODD, 96 C. 655 [31 P. 623, 31 Am.St.Rep. 247]; REEVES v. HUTSON, 144 C.A.2d 445 [301 P.2d 264].)

''Therefore, the order vacating the judgment and setting aside the default is conditioned in accordance with the order of this date, signed herewith.

''Consistent with this memorandum, the Court makes its order this date.''

such a conclusion, as distinguished from attacks on the sufficiency of the evidence to justify the imposition of sanctions, or the abuse of discretion by the court in that regard, is predicated upon constitutional grounds. In *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300 [10 Cal.Rptr. 377], the rule is stated as follows: ''While under the statute the court undoubtedly has the power to impose a sanction which will accomplish the purpose of discovery, when its order goes beyond that and denies a party any right to defend the action or to present evidence upon issues of fact which are entirely unaffected by the discovery procedure before it, it not only abuses its discretion but deprives the recalcitrant party of due process of law. 'The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends.' (*Hovey* v. *Elliott, supra,* 167 U.S. 407, 414 [17 S.Ct. 841, 42 L.Ed. 215, 220].) '' (188 Cal.App.2d at p. 305; and see *Crummer* v. *Beeler* (1960) 185 Cal.App.2d 851, 860 [8 Cal.Rptr. 698].) The foregoing cases merely establish that an abuse of discretion in imposing a default as a sanction may be attacked by a writ of mandamus before judgment or by appeal after judgment and they fall short of declaring that the relief granted the moving party was void. On the contrary, where a default judgment has been entered following an order under section 2034 of the Code of Civil Procedure which struck a defendant's answer, it cannot be attacked as void because of alleged infirmities in the service of the interrogatories which allegedly were unanswered. If more than six months has run since the entry of the default, relief under section 473 of the Code of Civil Procedure is barred and it is error to set aside the judgment. (*Johnson* v. *Hayes Cal. Builders, Inc.* (1963) 60 Cal.2d 572, 576-577 [35 Cal.Rptr. 618, 387 P.2d 394].) In *Thompson* v. *Vallembois* (1963) 216 Cal.App.2d 21 [30 Cal.Rptr. 796], the action was dismissed because of plaintiff's failure to answer interrogatories. The trial court granted plaintiff's motion to set aside the dismissal which was not served and filed until over nine months later. It was held that the court had no jurisdiction to make the order setting aside the judgment. The reviewing court noted: ''The court clearly had the power and authority under Code of Civil Procedure section 2034, subdivi-

sion (d), to dismiss the action as a means of enforcing discovery rules'' (216 Cal.App.2d at p. 25); and, ''Generally speaking, a judgment regular in form and duly entered may be attacked in four ways: (1) by motion for a new trial; (2) by an appeal; (3) by a motion for relief pursuant to section 473 of the Code of Civil Procedure; or (4) by an independent suit in equity. This was not a motion for new trial, or an appeal, or an independent suit in equity based on an allegation of fraud, so plaintiff must have been relying on section 473 of the Code of Civil Procedure, even though he does not claim mistake, inadvertence, surprise or excusable neglect as a ground for relief in his notice of motion. But more than nine months elapsed between the entry of the judgment and the making of the motion, and an application for relief under section 473 of the Code of Civil Procedure is specifically restricted by the terms of the code section itself to six months.'' (*Id.*, p. 24.)

*Societe Internationale* v. *Rogers* (1957) 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255] reviewed the dismissal of a complaint for failure of the plaintiff to comply fully with a pretrial production order. The court did not hold the dismissal void, but concluded: ''In view of the findings in this case, the position in which petitioner stands in this litigation, and the serious constitutional questions we have noted, we think that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner. [Fn. omitted.]'' (357 U.S. at p. 212; and cf. *Hovey* v. *Elliott* (1897) 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215] with *Hammond Packing Co.* v. *Arkansas* (1909) 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530], as reviewed in *Rogers*, pp. 209-210; and in *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, 304-307; and in *Unger* v. *Los Angeles Transit Lines, supra,* 180 Cal.App.2d 172, 186-188.)

The conclusion that the original action of the court in ordering sanctions and that the default and judgment predicated thereon are not void does not compel a decision for plaintiffs. In *Johnson* and *Thompson* the orders setting aside the judgments were set aside because application for relief was made more than six months after default. (60 Cal.2d 572 at p. 576; and 216 Cal.App.2d 21 at p. 24.) In *Crummer* v. *Beeler, supra,* the defaulting defendant proceeded to attack the judg-

ment in the manner recognized by the quotation from *Thompson* set forth above. The record reflects that "defendant subsequently filed notice of motion to reconsider said ruling [striking his answer and entering judgment by default for defendant's wilful failure to appear for his deposition as noticed] on the grounds that it was harsh and unjust"; and that after judgment was ordered for plaintiff and the prior motion denied, he noticed "motions for new trial, to set aside and vacate the judgment, for relief under section 473 of the Code of Civil Procedure, . . . and for a stay of execution." All of these motions were denied, but on appeals from the judgment and the denial, the appellate court in considering whether the trial court had abused its discretion considered all matters brought before the court on the motions. (185 Cal. App.2d 851, 852-853 and 857.) From the foregoing it is concluded that under appropriate circumstances the trial court may review an order imposing sanctions and a judgment predicated thereon.

Plaintiffs acknowledge that this is so, but have attempted to demonstrate that the circumstances outlined above do not bring this case within the provisions of section 473 of the Code of Civil Procedure (see *Unger* v. *Los Angeles Transit Lines, supra,* 180 Cal.App.2d 172, 184-186); within the rules governing relief for extrinsic fraud or mistake (see *Preston* v. *Wyoming Pac. Oil Co.* (1961) 197 Cal.App.2d 517, 529 [17 Cal.Rptr. 443]); or within the circumstances where the court may act to correct a clerical or other nonjudicial mistake (see *Nacht* v. *Nacht* (1959) 167 Cal.App.2d 254, 262-265 [334 P.2d 275]). They contend that the grounds asserted in the motion do not purport to fall within any of the foregoing categories of relief; that no evidence was presented to support such; that the grounds advanced by the trial court in its memorandum opinion, which was incorporated in its order, do not indicate that the court was acting within any of the foregoing principles; and that in any event defendants did not offer and the court did not order them to cure any default as a condition of relief.

Defendants, aside from contending that the order and subsequent judgment were void as hereinabove discussed, do not produce substantial opposition to the foregoing contentions. No "mistake, inadvertence, surprise, or excusable neglect" (Code Civ. Proc., § 473) was alleged, nor was any evidence offered to show such as a matter of fact. Nor was there any allegation or proof of extrinsic fraud or mistake (see *Weitz* v.

*Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700]; and *Corey* v. *Weerts* (1963) 214 Cal.App.2d 416, 422 [29 Cal.Rptr. 533]), or clerical error (Code Civ. Proc., § 473).

Defendants suggest that there was mistake and inadvertence on the part of the court in failing to consider the entire scope of the discovery which had been effected both within and without the court proceedings. By this thin thread they seek to bind the order setting aside to *Key System Transit Lines, supra* (36 Cal.2d 184, 187; but cf. pp. 189 and 192; and *Greene* v. *Superior Court* (1961) 55 Cal.2d 403, 405-406 [10 Cal.Rptr. 817, 359 P.2d 249]; and *Phillips* v. *Trusheim* (1945) 25 Cal.2d 913, 917 [156 P.2d 25]). They also refer to alleged concealment by plaintiffs of facts which reflected on the value of the Mexican assets as fixed in the judgment which followed the default hearing, and claim resultant error, mistake, fraud and inadvertence. (See *Batchelor* v. *Finn* (1959) 169 Cal. App.2d 410, 417 [337 P.2d 545, 341 P.2d 803].) This again is a thin reed on which to support the order. The record fails to disclose the evidence, as distinguished from the statements, on which defendants predicate their assertion. It does disclose that the information given the court at the ex parte hearing on the judgment was that which plaintiffs had secured by such discovery as had been effected. If it was erroneous or incomplete the trail of guilt leads to defendants' door.

No attempt is made to show that the order and judgment could be vacated because of clerical error. Defendants' ratiocination extends only as far as the ''inadvertence and mistake'' countenanced in *Key System Transit Lines, supra.* (36 Cal.2d at p. 188.)

A hesitancy to grasp at the foregoing straws does not preclude further examination of the record herein and the laws applicable thereto in resolving the dispute concerning the order vacating the judgment. The generally acknowledged ''policy of the law to favor, whenever possible, a hearing on the merits'' (*Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 854) dictates such a search. The distinction between an ordinary default judgment which is predicated on the failure of a party to appear by answer or other pleading, or at a trial (Code Civ. Proc., §§ 585, 586 and 594), and a default judgment ordered by the court as a penalty (*id.,* § 2034, subd. (b)(2)(iii) and § 2034, subd. (d)) against an appearing party after the resolution of factual and legal issues attendant to the imposition of that penalty, warrants further analysis of the powers and

jurisdiction of the trial court. A review of the former type of judgment by the trial court generally involves application for relief under the provisions of section 473 of the Code of Civil Procedure because of mistake, inadvertence, surprise, or excusable neglect, and relief by motion for new trial would be inappropriate and foreclosed because there has been no issue either of fact or law, or both, which was resolved before judgment. In the second type of default judgment the grounds for relief found in section 473 may or may not exist, but generally, as in this case, the propriety of the order and the ensuing judgment will involve complex and contested questions of fact and law which appropriately could be reexamined on a motion for new trial.

In *Crummer* v. *Beeler, supra*, 185 Cal.App.2d 851, the successful appellant had made a motion for new trial which was denied. Examination of the terms of the motion made in this case, as hereinabove set forth, reflects that the first three grounds generally allege errors of law; that the fourth and fifth grounds are phrased in the language of subdivision 1 of section 657 of the Code of Civil Procedure; and that the sixth ground is phrased in the terms of subdivision 6 of that section. It in all respects appears to be a motion authorized by the provisions found in that section of the code. It was filed in time, two days after the entry of judgment (Code Civ. Proc , § 659), and was ruled upon by filed order and opinion within 60 days after the notice of motion was served and filed (Code Civ. Proc., § 660). Two factors mitigate against consideration of the motion and order as a motion and order made and pronounced under the provisions of sections 657-662 of the Code of Civil Procedure. "It has been held in a first group of cases, that pursuant to sections 590 and 656 [of the Code of Civil Procedure], as to various classes of judgments, a motion for a new trial was not the proper procedure; that the trial court should not grant a motion for a new trial: . . . (5) Default judgments: . . ." (*Carney* v. *Simmonds* (1957) 49 Cal.2d 84, 88-89 [315 P.2d 305].) Secondly, problems of timely compliance arise where the order is conditional as was the order in this case. (See *Chodos* v. *Superior Court* (1964) 226 Cal.App.2d 703, 707-713 [38 Cal.Rptr. 301], and cases therein reviewed.)

An examination of the cases cited in *Carney* in support of the quoted proposition reflects that insofar as they involve defaults, with one exception, they involve actual failure to plead or appear so as to tender an issue of fact. *Foley* v. *Foley*

(1898) 120 Cal. 33 [52 P. 122, 65 Am.St. Rep. 147] coincidently is a case involving what are now referred to as sanctions. The facts recite: "The defendant Foley interposed a demurrer to the complaint; but the court, on motion of plaintiff, struck out his demurrer and gave judgment against him as by default for his failure to pay certain alimony ordered by the court, and for neglect and refusal to subscribe his deposition taken in the action. Both defendants interposed motions for a new trial, but their motions were denied." (120 Cal. at p. 36.) The court concluded: "As to the appeals from the orders denying the motions of defendants for a new trial, they cannot be entertained. A motion for a new trial is not an appropriate proceeding to review the action of the court in giving judgment in a case where there has been no trial upon issues of fact. (Hayne on New Trial and Appeal, sec. 443; *Savings etc. Soc.* v *Meeks,* 66 Cal. 371 [5 P. 624] ; *Gregory* v. *Gregory,* 102 Cal. 50 [36 P. 364] ; *In re Heldt,* 98 Cal. 553 [33 P. 549].)

"In this case there was no such trial, the judgment being by default against both defendants. That is, while defendant Foley did not technically make default, there was no answer by either defendant controverting any fact, and the judgment against both was without a trial upon issues of fact. In such a case there is no office to be subserved by a new trial. A new trial is 'a re-examination of an issue of fact' (Code Civ. Proc., sec. 656) ; and, unless such an issue has been raised and tried, there is nothing which can be reviewed by this method." (*Id.,* at pp. 36-37.) Parenthetically the court found that the order complained of was a violation of due process of law on the authority of *Hovey* v. *Elliott, supra,* 167 U.S. 409.

The case, therefore, is direct authority for the proposition that a motion for new trial cannot be entertained for a default judgment even though the default was ordered by the court by way of a penalty for acts other than a party's failure to plead or appear. The strength of this precedent is weakened by the company in which it finds itself in *Carney* v. *Simmonds.* Therein Justice Carter, with the concurrence of all the members of the court, freed the motion for new trial from the shackles of the strict interpretation of the provisions of section 656 of the Code of Civil Procedure. After reviewing cases covering various classes of judgments, the provisions of sections 590 and 656 and the grounds for new trial specifically mentioned in section 657 of that code, he concluded as follows: "As a matter of orderly procedure there is no less reason why the trial

court should have a second chance to reexamine its judgment where issues of fact are involved than where issues of law or law and fact are decided. We conclude therefore that a motion for a new trial is proper procedure in any of the classes of judgments mentioned in the first group of cases above cited whether the judgment is based on law or fact or both, except possibly in the case of default judgments or judgments by agreement or confession where there may be the question of the right of the moving party to make any objection to the judgment.'' (49 Cal.2d at p. 90.) The classes of cases referred to are ''(1) Judgment of dismissal after demurrer sustained: . . . (2) Judgment of dismissal generally: . . . (3) Judgment on the pleadings: . . . (4) Judgment on agreed statement of ultimate facts: . . .'' (*Id.*, p. 88.) Already recognized as subject to the motion were some cases of judgment on the pleadings, and judgments following sustaining of objections to introduction of evidence because of insufficiency of the pleadings, judgments of nonsuit, and judgment on a directed verdict. (*Id.*, p. 89.) Similarly the motion will lie following a summary judgment. (*Green* v. *Del-Camp Investments, Inc.* (1961) 193 Cal.App.2d 479, 481 [14 Cal.Rptr. 420].)

█ It is concluded that since the time of the decision in *Carney*, a trial court can reexamine its judgment regardless of whether issues of law, rather than fact, are involved. The passage quoted above suggests that in the case of a default judgment, where the right of the moving party to make an objection to the judgment has not been forfeited, bargained away, or otherwise lost, he may use a motion for new trial to secure a reexamination of such questions of law, fact, or law and fact as were involved in the proceedings which culminated in the order for the entry of his default and the ensuing judgment. Insofar as *Foley's* life blood flows from the provisions of section 656 of the Code of Civil Procedure it succumbs with the other cases which before *Carney* supported the rule that there could be no reexamination of a judgment by motion for new trial unless there had been a trial of an issue of fact. The trial court had power and jurisdiction to reexamine its judgment and the proceedings leading thereto in the light of the grounds asserted in defendants' motion.

█ The record, however, fails to reflect that defendants initiated proceedings in the manner prescribed and customarily followed to activate the trial court's exercise of the power and jurisdiction conferred by the provisions of sections 656-662 of the Code of Civil Procedure. Despite the fact that

the grounds asserted fall within those recognized by law for granting a new trial, the motion was titled and was in all respects referred to as an application for an order which would vacate the judgment and the order upon which the judgment was predicated. Neither the points nor authorities appended to the notice of motion, the declaration filed in support thereof, nor the subsequent arguments in the trial court and before this court referred to the relief as falling within that authorized by the adjudication of a motion for new trial. The notice of the time for hearing on the motion followed that prescribed for motions in general, to the disregard of the statutory provisions for setting a hearing on a motion for new trial. (Cf. Code Civ. Proc., § 1010 with §§ 659 and 661.) It is alleged, without contradiction, that the fees required for such a motion were not tendered or paid (see Gov. Code, § 26830). Neither the order of the trial court granting the motion, nor its memorandum opinion, which was incorporated by reference in that order, refer in any way to the subject of a new trial.

On this state of the record the relief granted by the trial court in vacating the judgment and the prior order cannot be attributed to and upheld as a conscious exercise of the power to vacate and modify a judgment which is conferred by the provisions of sections 657 and 662. (*Treat* v. *Superior Court* (1936) 7 Cal.2d 636, 639-640 [62 P.2d 147] ; *Simmons* v. *Dryer* (1963) 216 Cal.App.2d 733, 738-739 [31 Cal.Rptr. 199] ; *Avery* v. *Associated Seed Growers, Inc.* (1963) 211 Cal.App.2d 613, 622-623 and 626-627 [27 Cal.Rptr. 625].) The foregoing authorities appear to require that the applicant must make a ''motion for a new trial'' even where he seeks but a vacation and modification of the findings and judgment pursuant to the provisions added to sections 657 and 662 in 1929. (Statutes 1929, chapter 479, sections 2 and 7, pages 841 and 842-843; and cf. Code of Civil Procedure, sections 663 and 663a which provide for independent proceedings to vacate where attack is made only on the conclusions of law or judgment as not supported by findings of fact or a special verdict which is accepted as correct.) The trial court, in turn, must then deny ''the new trial'' when it grants the latter relief. (See *Estate of Perkins* (1943) 21 Cal.2d 561, 567-568 [134 P.2d 231] ; *Moklofsky* v. *Moklofsky* (1947) 79 Cal.App.2d 259, 263-265 [179 P.2d 628] ; and *Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau* (1937) 21 Cal.App.2d 138, 149-150 [68 P.2d 998].) Nevertheless, the fact that such power exists, if properly called into play, is a persuasive factor in justifying the granting of

similar relief under the circumstances extant and the procedure followed in this case. Until the judgment became final the court could properly review and modify its order for sanctions. In so doing it could vacate the judgment which itself was dependent on that order. An examination of the grounds asserted and noted by the trial court for modifying the sanction order reflects sufficient basis for the action which was taken.

The issues embraced within the motion included the propriety of the order for sanctions on which the default and judgment rested. It has already been noted that that order was nonappealable, and it follows that it must be reviewable with the judgment. The test of the action of the trial court in setting aside the sanctions theretofore imposed is found in *Malkasian* v. *Irwin* (1964) 61 Cal.2d 738 [40 Cal.Rptr. 78, 294 P.2d 822], wherein the court was reviewing the propriety of an order granting a new trial for misconduct of counsel despite lack of objection at the time of trial by the moving party. The opinion states: ''But the trial court has broad discretion in considering motions for a new trial. Here the court had definitely determined that there had been 'a miscarriage of justice.' The court definitely felt a new trial was required. The trial court's discretion should be upheld even where the error was a minor or debatable one. There is no necessity of showing prejudice in such a case. In the instant case, even if the challenged argument were only debatably erroneous, the trial court's discretion in granting the new trial cannot be disturbed.'' (61 Cal.2d at p. 747; and see also *Bettencourt* v. *Direct Transportation Co.* (1962) 210 Cal.App.2d 405, 408-409 [26 Cal.Rptr. 623] ; and *Kroff* v. *Kroff* (1954) 127 Cal.App.2d 404, 406 [274 P.2d 45].) Herein there was a bitterly contested question of law and fact involving the right to impose sanctions involving a default. (Cf. *Hovey* v. *Elliott, supra,* 167 U.S. 409 and *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, with *Hammond Packing Co.* v. *Arkansas, supra,* 212 U.S. 322 and *Ungar* v. *Los Angeles Transit Lines, supra,* 180 Cal.App.2d 172; and see *Societe Internationale* v. *Rogers, supra,* 357 U.S. 197.) The court had drawn the inference that defendant Candido could produce records of the foreign subsidiaries. The evidence was conflicting, and the power of the court to act as it did was highly debatable as is evidenced by defendants' cross-appeal. Under the provisions of section 2034 of the Code of Civil Procedure the court had wide discretion in imposing sanctions. Under the provisions of

section 662 of that code, if properly evoked, it would have wide powers to vacate or modify the judgment and the findings of fact and conclusions of law and other proceedings on which it was predicated. (See *Western Electro-Plating Co.* v. *Henness* (1961) 196 Cal.App.2d 564, 568 [16 Cal.Rptr. 691]; *Nobel* v. *You Bet Mining Co.* (1937) 22 Cal.App.2d 623, 628 [72 P.2d 205].) ▓ It apparently elected to substitute a marshalling of the assets, and an agreement for an independent audit and appraisal for sanctions of questionable validity. No abuse of discretion can be found in the court's action in so doing. In addition, it should be observed that there were also questions raised as to whether the discovery conducted outside of the courtroom had been fully disclosed to the court, and in relation to the valuation of the Mexican assets.

The order was conditioned upon the performance of certain acts by the defendants, and the time for performance was originally set beyond the 60-day period in which a motion for new trial could be determined. Defendants immediately, and within the 60-day period, manifested their consent to those conditions. Furthermore, it has been determined that "section 660, Code of Civil Procedure, while imposing a limitation on the time the court must rule on the motion, imposes no limitation upon the time which the court may see fit to specify for the performance of such condition imposed in the order. The limitation is solely upon the court itself; . . ." (*Chodos* v. *Superior Court, supra,* 226 Cal App.2d 703, 709.) The opinion points out that if the period for the performance of conditions is restricted to the time within which the motion must be granted, "lawyers and litigants often will not be given a reasonable time within which to comply with the conditions imposed by the court. This would have the practical result of denying the parties the opportunity to take advantage of what the court believes, after having heard the case, would make for a just disposition of the controversy. In some instances a few days might be ample within which to comply with conditions. In other situations the conditions imposed might reasonably require a longer period. These are matters which should be left to the sound discretion of the trial court, just as are the other factors in such conditional orders. If this is done, it will result, in many cases, in the avoidance of lengthy retrials of actions made necessary solely because of sudden-death conditions which do not afford a reasonable time for compliance. The prevention of unnecessary retrials will result in alleviating overburdened trial calendars." (*Id.,* pp. 711-712.) Al-

though the acceptance and performance of the conditions in this case would not alleviate but rather tend to burden the trial calendar in that it puts at large issues theretofore resolved at the trial court level by a default judgment, it is nonetheless justifiable if it tends to make for a just disposition of the controversy over validity of the sanctions theretofore imposed by the trial court. Finally, it is noted that the order and opinion, although conditional in terms, are in effect a definite pronouncement as to sanctions to be imposed, which are substituted for those contained in the June order. They speak presently, and it cannot be said that the motion has not been acted upon and that the court has not vacated the judgment and substituted a new order for that of June 24th. It is true that the judgment, the default, and the prior order are not decently interred. They are kept in the wings to be rushed on stage if the new performance is a flop Nevertheless the modification stands until defeated by failure of performance, and in this sense under section 662 the order would escape any alleged infirmity because of the conditions found therein.

The foregoing considerations demonstrate that the court acted properly prior to the time the judgment became final. (See Cal.Rules of Court, rules 2 and 3.) The conditions and the extensions of time for the performance thereof did not serve as an abortive attempt to modify a judgment that had become final by operation of law. The order of October 18, 1963, validly vacated the judgment before it could become final. The remaining orders were a proper exercise of the trial court's power to control the substituted sanctions.

It should be further noted that if the order be considered as properly made under the provisions of section 473 of the Code of Civil Procedure, conditions may properly be imposed, and their nature will determine whether the order is interlocutory or final. (See *Reeves* v. *Hutson* (1956) 144 Cal.App.2d 445, 450-451 [301 P.2d 264].)

Plaintiff's contention that the defendants should be denied relief because they are in default for failure to comply with the court's orders to produce documents and to answer interrogatories (see *Preston* v. *Wyoming Pac Oil Co., supra,* 197 Cal.App.2d 517, 532; and cf. *Batchelor* v. *Finn, supra,* 169 Cal.App.2d 410, 418), and the corollary argument that the order setting aside the default judgment is defective because it fails to give the plaintiffs the discovery to which they are entitled, both overlook the declared intention of the trial court to impose new sanctions in lieu of those previously ordered, and the fact that the performance of the conditions in the

order will not only give the plaintiffs the information which they sought, but also bring under the control of the court the very assets they seek for Jacuzzi.

It is concluded that the trial court had jurisdiction to make the vacating order of October 18, 1963, and that it was valid when made. The foregoing conclusion puts flesh on the framework of the principle of law which favors, wherever possible, a hearing on the merits (*Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 854), it bespeaks recognition of the principle that in discovery proceedings "an exercise of discretion by the trial court . . . may only be disturbed when it can be said there has been an abuse of discretion" (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 380 [15 Cal.Rptr. 90, 364 P.2d 266]) ; and gives the trial court the opportunity, in the exercise of that discretion, to apply the rule: "The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment." (*Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300, 304.) No violence is done to the principle of finality of judgments so long as the reexamination in the trial court of the discretion exercised in imposing sanctions is initiated and prosecuted to a conclusion within the times provided by law for reexamination of other judicial acts.

### *The finding of compliance with the conditions of*
### *the vacating order is supported by the record*

Appellants assert that in the event the conditional order of October 18, 1963, was, as has been indicated, valid when made, it is still ineffective to set aside the judgment because there was no compliance with its terms. On the one hand, they contend that there was no performance within the 15-day period prescribed in the order nor any valid extension of that period of time. Secondly, they claim that there has never been compliance with certain other provisions of the order.

The order in question after recitals, which include reference to the opinion set forth above (fn. 3), recites: "It Is Hereby Ordered, Adjudged and Decreed that subject to the conditions hereinafter stated said motion of said defendants is hereby granted as follows: 1. The order heretofore made on the 24th day of June, 1963, striking defendants' answer, is hereby set aside and vacated. 2. The default of the defendants heretofore entered is hereby set aside and vacated. 3. The Judgment here-

tofore rendered on the 15th day of August, 1963, and entered on the 19th day of August, 1963, in Judgment Book Volume No. 85 at page 3 (Reel), is hereby set aside and vacated. 4. The answers of said defendants on file herein are hereby restored and may stand as the answers of said defendants in this action. The foregoing order, adjudication and decree shall be effective upon the performance by said defendants of the following conditions: (a) Within a period of fifteen (15) days from the date hereof the stock certificates, contracts and other assets that are involved in this action, and which are described in paragraph 5 of said judgment, shall be deposited with the clerk of this court in custodia legis with written assignments thereof to Jacuzzi Bros., Incorporated, pending a final judgment in this action, and their disposition shall be subject to the provisions of said final judgment. (b) Defendants shall deposit in custodia legis such additional security in amount and form as may be required by the court. (c) Within a period of fifteen (15) days from the date hereof the defendants consent in writing to and this court appoint a disinterested international firm of certified public accountants to audit the books, records and documents of the defendants, JACUZZI BROS., INCORPORATED, JACBROS, S. A. GENEVA, and such subsidiary corporations as are controlled by the said JACUZZI BROS., INCORPORATED, and/orJACBROS, S. A. GENEVA, or in which either of them own a majority of the outstanding shares of stock, and to provide the court and the respective attorneys hereto with such other information as the court or either of the parties hereto, subject to the approval of this court, may request which relate to the issues involved in this action. The cost of said audit shall be borne by the defendants, JACUZZI BROS., INCORPORATED, and JACBROS, S. A. GENEVA, in such proportions as agreed upon between them. (d) The time for the performance of the acts required in paragraphs (a), (b) and (c) above may upon the request of the defendants and upon notice to the attorneys for plaintiffs, and upon good cause shown therefor, be extended for a reasonable period of time. The foregoing conditions imposed upon defendants in this order shall upon performance thereof by defendants be in lieu of the sanctions removed by the provisions of this order.''

*The time for performance of the conditions set forth*
*in the order was effectively extended*

█ According to the declaration of one of the attorneys for defendants, he phoned one of the attorneys for plaintiffs on October 31, 1963, and advised him that he was going to see

the judge who signed the order and who was then assigned to the juvenile court in San Leandro, for the purpose of securing an extension of time to comply with the order, and that he was depositing with the clerk of the court all of the shares of stock referred to in the order. Plaintiffs' attorney was invited to attend. At 2 p.m. on that day an order extending the time to November 15, 1963, was presented to the judge. He too telephoned the attorney for plaintiffs, and, as reflected by subsequent colloquies in open court, the attorney advised the judge that he took the position that the judge did not have jurisdiction to grant an extension of time, that he did not acquiesce in his signing the order, and that his position was that the court had no jurisdiction to make the order of October 18th and no jurisdiction to grant any extensions either.[4]

The order was signed and filed on October 31, 1963, and a copy was forwarded to the attorneys for the plaintiffs. The order reads: "FOR GOOD CAUSE APPEARING IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendants' time to comply with the provisions of that certain Order Vacating and Setting Aside Judgment, etc. signed by Judge John J. Purchio on October 18, 1963, and entered on same date is hereby extended to and including November 15th, 1963. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon the showing of good cause, additional time to comply with the provisions of said order shall be granted by the court."[5]

The declaration of cocounsel for the defendants reflects that on November 13, 1963, he deposited copies of contracts and other documents with the clerk of the court, and presented an order extending time for compliance to the judge, who then had a telephone conversation with the plaintiffs' attorney. The order was later completed by the judge to extend the time to November 29th, and was signed and filed November 14th.

On November 26th, the defendants' motion for an order finding compliance came on for hearing. The court was unable to hear the matter which was continued on the court's motion, and an order was signed in open court extending the time for com-

[4]In a counterdeclaration the attorney alleges that he specifically referred to lack of notice of the application for the extension in each of his conversations with the attorney for defendants and the judge.

[5]On February 18, 1964, an order was signed and filed, allegedly at the instance of the plaintiffs, which provided for the entry *nunc pro tunc* of minute orders, which were prefaced "On ex parte application and without notice to plaintiffs or their attorneys, and without evidence, written or oral, it is ordered" etc., purporting to reflect the proceedings at the first six extensions of time covering the period to February 7, 1964.

pliance to December 9th. Subsequent orders to and including the time of the ruling on the motion for compliance were secured in connection with or on account of continuances of the hearings on that and other motions. The time was used by defendants to secure and deposit a note and further contracts on December 12, 1963, and to deposit written assignments, covering the documents theretofore filed, on January 15, 1964. The remaining continuances were apparently applied for to protect the right to make further deposits, if necessary to meet any objections raised by plaintiffs which might be upheld by the court.

If the court had no power to extend the time, or if its acts in purporting to extend the time were void because of lack of formal notice to plaintiffs, the motion to vacate would be deemed denied at the expiration of the 15 days since concededly full performance had not been effected at that time. (See *Brown* v. *Cline* (1895) 109 Cal. 156, 159 [41 P. 862]; *Armstrong* v. *Superior Court* (1883) 63 Cal. 410, 414; *Hartman* v. *Olvera* (1874) 49 Cal. 101, 102; *Chodos* v. *Superior Court, supra,* 226 Cal.App.2d 703, 713; *Chapman* v. *Municipal Court* (1949) 91 Cal.App.2d 689, 691 [205 P.2d 712]; and *Jennings* v. *Superior Court* (1933) 134 Cal.App. 300, 305 [25 P.2d 246]; *Gloria* v. *A. Colonia Portuguesa* (1933) 128 Cal.App. 640, 642-643 [18 P.2d 87]; and *Hayes* v. *Butler* (1914) 25 Cal.App. 743, 746 [145 P. 553].)

Cases which deal with the requirement of notice for the institution of new proceedings, whether in a separate, or within an existing action, are not pertinent to the question presented here. (See *McDonald* v. *Severy* (1936) 6 Cal.2d 629, 631 [59 P.2d 98]; *Olcese* v. *Superior Court* (1930) 210 Cal. 566, 567-568 [292 P. 964]; *Higgins* v. *Kay* (1914) 168 Cal. 468, 472-473 [143 P. 710]; and *Caledonia Ins. Co.* v. *Superior Court* (1956) 140 Cal.App.2d 458, 460-461 [295 P.2d 49].) Plaintiffs' reliance on *Beyerbach* v. *Juno Oil Co.* (1954) 42 Cal.2d 11 [265 P.2d 1], is closer to the mark. Therein the opinion recites: "[T]he order of August 27, 1951, required that plaintiff deposit security within 30 days and that if he did not do so the action, upon proper showing, should be dismissed. Twice on ex parte application of plaintiff a judge signed an order purporting in effect to modify the original order (which had been regularly entered after hearing on notice) by extending the time for deposit of the security. Although defendants have, for the purpose of argument, assumed that the ex parte orders might be effective, at least in part,

this assumption is contrary to the established rule that 'the trial court is without power to set aside an order involving judicial action and regularly made, and enter another and different order *without notice* to the adverse party.' (*Harth* v. *Ten Eyck* (1941) 16 Cal.2d 829, 834 [108 P.2d 675]; *Bond* v. *Farmers & Merchants Nat. Bank* (1944) 64 Cal.App.2d 842, 848 [149 P.2d 722].) In this case the determination, and the fixing by the order, of the period which under all the circumstances shown would constitute a reasonable time for the furnishing of the security was just as much a part of the 'judicial action' as was the determination and fixing of the amount and character of the security to be required. A motion seeking to amend that order in any particular which had been fixed as a part of judicial action could be entertained only upon notice to the adverse parties. It follows that the purported orders postponing the time for deposit of the security, having been made ex parte, were ineffective.'' (42 Cal.2d at p. 28; see also *Gloria* v. *A. Colonia Portuguesa, supra,* 128 Cal. App. 640, 642-643.) The security referred to was that required on motion and order pursuant to provisions of section 834 of the Corporations Code in a stockholders' derivative suit. The order recited ''that if plaintiff fails to provide such security for any of the defendants herein within the time herein provided, then upon proper showing thereof, the action shall be dismissed. . . .'' The opinion does not reveal any clause, such as is contained in the order in this case, which reserved to the court the right to extend the time for performance. The establishment of such right would therefore have to be on notice to the adversary. Furthermore, it is noted that the statute expressly makes the deposit of the security a condition precedent to the maintenance of a new action. In this case the question is posed in the atmosphere of relief from default.

The propriety of extending time for the performance of conditions in a setting similar to that presented herein is discussed in *Hyams* v. *Simoncelli* (1940) 41 Cal.App.2d 126 [106 P.2d 68]. Therein the trial court twice granted ex parte orders extending the time of plaintiff to agree to a reduction of the amount of the judgment as a condition of denial of the defendant's motion for a new trial. He ultimately agreed to the reduction within the time as so extended and the motion for new trial was denied. The appellants relied upon *Gloria* v. *A. Colonia Portuguesa, supra,* 128 Cal.App 640. The court, Peters, P. J., stated: ''In the instant case, before the time fixed had expired, extensions were granted, and the consent was

filed within the time so extended. This is a fundamental distinction. It is doubtless true that under the rule set forth in the *Gloria* case, *supra,* and the cases cited therein, where the trial court has once ruled on the motion for a new trial, it cannot change its ruling because of an alteration in the view of the court as to the law even within the period prescribed by law for passing on the motion, at least in the absence of application under section 473 of the Code of Civil Procedure. But no logical or legal reason exists why, before the order becomes operative, the trial court cannot properly grant an extension of time, as long as such extension does not exceed the time prescribed by law for passing on the motion.'' (41 Cal.App.2d at p. 130.) The opinion adopted as sound and logical for a rule in this state the following passage from *Harris* v. *Speirs* (1920) 55 Utah 474, at p. 479 [186 P. 445] : '' 'No one does, or can, contend that the district court did not have the power to make the conditional order and in connection therewith to determine and fix the time within which plaintiff should be required to elect. Nor can anyone successfully dispute the proposition that the time plaintiff should be given to elect was not entirely within the sound legal discretion of the court. It could have fixed any reasonable time limit within which plaintiff should make the election. In view of that fact, why could not the court extend the time limit as originally fixed, on proper application being made for such an extension ? In case where a court may fix a time limit within which a party to an action may do an act the determination of which is manifestly within the court's discretion, why has it not the inherent power to extend the time limit as first fixed ? We confess our entire inability to perceive any reason why it may not do so.' '' (*Id.*, at p. 131.)

The last clause in the passage first quoted indicates that if the order herein be considered as analogous to an order granting a new trial, the power to modify or extend the time for the performance of any condition terminated at the expiration of the time within which the motion for new trial could be acted on. In fact the clause suggests that the time for performing any condition could not be designated as past that time. (See also *McDonald* v. *Randolph* (1947) 80 Cal.App.2d 367, 371-372 [181 P.2d 909].) In *Chodos* v. *Superior Court, supra,* 226 Cal App.2d 703, as has been observed, the court interpreted earlier cases as permitting a time limit, in excess of the period in which the motion for new trial has to be acted on, for the performance of conditions set forth in a timely order passing

on the motion. *Hyams* and *McDonald, supra,* were qualified and limited and the court, Burke, P. J., stated: "We believe the correct interpretation of the last quoted portion from *Hyams* is that the trial court can properly grant an extension of time for the performance of a condition as long as the court acts within the 60-day period. (See, 3 Witkin, Cal. Procedure (1954) § 42, subd. (c), p. 2093, which interprets this phase of *Hyams*—'But the time specified by the judge is not jurisdictional; [the court] may grant extensions within the statutory time to rule, and a consent filed within the extended time is effective.') We conclude that while the time for the judge to act on the motion is limited by the section, the time which the court fixes for the parties to act upon the conditions imposed is not so limited." (226 Cal.App.2d at p. 713.)

From the foregoing it appears that if the order of October 18, 1963, is considered as similar to a mere conditional order granting a new trial on the issues raised by the motions for sanctions there would be a serious question as to whether the court could reserve the right, as it purported to do, to grant an extension of time after it no longer had power to rule on the motion. This, however, is not the true posture of the order. By its terms it evidences that the court has in effect reviewed the questions of law and fact involved in its earlier ruling of June 24th, and, pursuant to the powers such as are conferred by sections 662 and 2034 of the Code of Civil Procedure, has substituted new sanctions for the old. In its control over this order the court is to be guided by the discretion conferred in matters of discovery and by general equitable principles. The latter, as applied in actions for rescission or redemption, demonstrate the power of the court to extend the time for performance. (See *Leslie* v. *Federal Finance Co., Inc.* (1939) 14 Cal.2d 73, 82 [92 P.2d 906]; *Solorza* v. *Park Water Co.* (1949) 94 Cal.App.2d 818, 821 [211 P.2d 891]; *Gibson* v *River Farms Co.* (1942) 49 Cal.App.2d 278, 283-286 [121 P.2d 504]; *Boyd* v. *Lancaster* (1941) 43 Cal.App.2d 161, 164-165 [110 P.2d 532]; *Los Angeles A. T. Co.* v *Superior Court* (1928) 94 Cal.App. 433, 439-441 [271 P. 363].) If the order be considered as made pursuant to the provisions of section 473 of the same code, it is clear that the court can control the performance of the conditions and determine whether there has been compliance. (See *Reeves* v. *Hutson, supra,* 144 Cal.App. 2d 445, 450-453.)

Plaintiffs insist that the lack of formal notice precludes con-

sideration of the court's exercise of its power to modify the order by extending the time for performance, and that the court should strictly comply with the provisions it established for itself. In the first place, the order does not purport to set forth the nature of the notice to be given plaintiffs; secondly the record shows that plaintiffs' attorney was cognizant of the applications for extensions of time, and in fact voiced his objections to the judge. No purpose would have been served by securing orders shortening time and serving formal papers on plaintiffs. In fact the first and subsequent orders extending time purported to reserve to the court the power to grant further extensions without notice. It is obvious the result would have been the same. Despite the recitals in the minute orders there was some evidence of good cause before the court. The defendants had consented to the terms of the order, and by the first two deposits evidenced that they were proceeding in good faith to comply therewith. Under these circumstances the plaintiffs have failed to show prejudicial error because they were not served with formal notices of motion each time defendants made a "request" for an extension of time. The strict rule of *Beyerbach* should be confined to the circumstances in which it is found, and the "sound and logical" rule of *Hyams* should be applied.

### There was substantial performance of the terms prescribed in the order

Paragraph 5 of the default judgment, which is referred to for a description of the matters to be deposited under the order of October 18, 1963, includes—in addition to stock of Mexican, Canadian, Brazilian and Argentine subdivisions or affiliates and licensing contracts — royalties and dividends which had accrued at the time of sale in the aggregate sum of $218,453.88. Plaintiffs contend that this sum is an asset involved in the action which should have been deposited with the clerk, and admittedly has not been so deposited. Defendants assert that, as is reflected in the judgment, a sum of almost $700,000 has been paid to the domestic corporation as a result of the sale, that these payments include the accrued royalties and dividends in question, and that therefore they should not be required to deposit further cash with the court. Plaintiffs counter with a reference to additional damages they claim consisting of income received on the transferred assets by the Swiss corporation in the sum of $987,519.39, funds of the domestic corporation wrongfully expended by defendants for

the Swiss corporation in the sum of $289,966 and interest on the foregoing amounts in the sum of $146,967.04, all in the aggregate sum of $1,424,452.43. They concede that the domestic corporation would have to credit or repay $699,578.92 if rescission is adjudged, but insist that this sum cannot be credited against the cash value of the accrued dividends and royalties which existed at the date of sale. For reasons best known to itself, the trial court, in the order of October 18, 1963, did not provide for payment into court of the amounts claimed by plaintiffs as accruing since the sale, which are found in separate paragraphs of the default judgment. It only required the deposit of the transferred assets. The foregoing contentions were presented to the trial court and no abuse of discretion appears from the interpretation of its own order which permits defendants to offset a portion of the consideration acknowledgedly paid for the assets against the cash which they otherwise were required to deposit.

 The point that the defendants have failed to comply with the provision of the October 18th order which requires "such additional security in amount and form as may be required by the court," appears to be predicated on the erroneous theory, set forth in plaintiffs' answer to defendants' motion for an order of compliance, that it is the defendants' responsibility to have this amount determined. The court has indicated by minute order and formal order that it will be guided by the result of the audit and appraisal in determining what, if any, additional security will be required. There is nothing to prevent plaintiffs from seeking other action by the court under this provision, but the record fails to show that they have done so. Since the court has never required additional security the defendants are not in default in failing to provide it.

It is concluded that the court properly granted defendants' motion for a finding of compliance, and correctly denied plaintiffs' motion to vacate the order of October 18, 1963.

*There was no error in denying plaintiffs' motion*
*for order enjoining attorneys, etc.*

 By their notice of motion served and filed November 26, 1963, plaintiffs instigated proceedings to enjoin the attorneys for the individual defendants from representing the domestic corporation, and to enjoin the named defendants from controlling that company. The motion was made on the grounds that the interests of the corporation and the other

defendants were adverse to each other; that the corporation was under a disability; that the attorneys were under the control of the individuals who were charged; and that the defendants were controlling the corporation in a manner to defeat the corporation's just claims against them.

Plaintiffs' argument is predicated upon the theory that the default judgment should stand and that the same attorney should not represent the domestic corporation as judgment creditor, and the Swiss corporation and the individual defendants as judgment debtors. In *Elberta Oil Co.* v. *Superior Court* (1930) 108 Cal.App. 344 [291 P. 668], it was held proper to preclude an attorney from representing both the corporation and another defendant who had filed a cross-complaint against the corporation. In general, however, prior to an adjudication that the corporation is entitled to relief against its officers, or directors, the same attorney may represent both. (*Otis & Co.* v. *Pennsylvania R. Co.* (E.D.Pa. 1944) 57 F.Supp. 680, 684.) Since the order vacating the judgment is affirmed, the case remains within the latter principle and the trial court did not err in denying plaintiffs' motion.

 The parties have costumed these proceedings in the garb of default matters with particular attention to mistake, inadvertence, surprise, or excusable neglect, or to the lack thereof. When trimmed of these trappings and exorcized of procedural complications, the case reveals itself as one involving the practice of the court's discretion in the field of discovery. A review of the record reflects no abuse of discretion in tempering the harsh blow of the original sanctions, and commendable attempts to preserve the status quo by the deposit of assets, and to ferret out the truth with the use of international accountants.

Some confusion may exist as to just which appeals are properly before the court and the matters which may be reviewed. For the purposes of this case it may be found that the order of October 18, 1963, was self-executing although conditional, and was appealable as an order made after judgment. (*Reeves* v. *Hutson, supra*, 144 Cal.App.2d 445, 450-451; and see *Colby* v. *Pierce* (1936) 15 Cal.App.2d 723, 726 [59 P.2d 1046].) The second order of May 4, 1964, which finds compliance, and the order of that date denying the motion to vacate, raise new matters as to the efficacy of the order of October 18, 1963, on the prior judgment. They may be treated as appealable as further orders after judgment (144 Cal.App.

2d at p. 452 and 15 Cal.App.2d at p. 726). Although it is suggested that the latter orders cannot be an order after judgment, if the first order has vacated the judgment (144 Cal. App.2d at p. 452), this matter would not necessarily have been concluded by affirmance of the appeal from the first order, because the performance of the conditions might still be in issue despite an adjudication of their validity. (See *Holtum* v. *Grief* (1904) 144 Cal. 521, 526 [78 P. 11]; and *Hurt* v. *Basalt Rock Co.* (1948) 84 Cal.App.2d 81, 85 [190 P.2d 240].) The appeal from the order denying the injunction in respect to the attorneys is entertained on the authority of *Meehan* v. *Hopps* (1955) 45 Cal.2d 213 [288 P.2d 267].

Defendants' appeal from the judgment and the motion to dismiss the same are rendered moot by the affirmance of the order vacating that judgment. (*Chodos* v. *Superior Court, supra,* 226 Cal.App.2d 703, 714-715; *Lynch* v. *Betts* (1962) 198 Cal.App.2d 755, 759 [18 Cal.Rptr. 345]; *McDonald* v. *Randolph* (1947) 80 Cal.App.2d 367, 372 [181 P.2d 909].)

(1) The order vacating order striking defendants' answers, vacating and setting aside default and default judgment, and restoring defendants' answers dated and filed October 18, 1963, and the orders extending time, as set forth in plaintiffs' notice of appeal filed December 1963, are affirmed. (2) Plaintiffs' appeal from the minute order of April 21, 1964, is dismissed as incorporated in the appeals from the formal orders entered May 14, 1964. (3) The order vacating order striking defendants' answers, vacating and setting aside default judgment and restoring defendants' answers made May 1, 1964, filed May 4, 1964, and entered May 14, 1964, (4) the order denying plaintiffs' motion to vacate, set aside and render ineffectual order, made, filed and entered as aforesaid, and (5) the order denying plaintiffs' motions for order enjoining attorneys from representing Jacuzzi Bros., Incorporated, and for order enjoining defendants from controlling the acts of said corporation herein, made, filed and entered as aforesaid are each affirmed. (6) Defendants' cross-appeal from the default judgment rendered August 15, 1963, and entered August 19, 1963, and (7) plaintiffs' motion to dismiss said appeal, are each dismissed as moot.

Pursuant to the provisions of subdivision (a) of rule 26, California Rules of Court, it is ordered that defendants recover their costs on both appeals and upon their cross-appeal, without prejudice, however, to plaintiffs' right to seek reim-

bursement for the same and their own costs if they ultimately prevail on the first cause of action in their complaint.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied July 19, 1966, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied August 17, 1966.